744 P.2d 444

Donald L. WILCOX, D.D.S. and Shelley K. Wilcox, husband and wife, Plaintiffs–Appellants,

v.

Donald A. WALDMAN and Jane Doe Waldman, husband and wife, Defendants–Appellees.

1 CA–CIV 9004.

Court of Appeals of Arizona, Division 1, Department A.

May 21, 1987.

Reconsideration Denied July 1, 1987.

Review Denied Oct. 14, 1987.

Harrison & Lerch, P.C. by Stephen M. Dichter, Mary E. Berkheiser, Lee Allen Johnson, Phoenix, for plaintiffs-appellants.

McLoone, Theobald & Galbut, P.C. by Mack T. Jones, Phoenix, for defendants-appellees.

## OPINION

GRANT, Presiding Judge.

Appellants Donald L. Wilcox and his wife Shelley K. Wilcox (Wilcox), settlors and beneficiaries under a trust agreement, brought suit against the trustee, Donald A. Waldman, and his wife, (Waldman or trustee) for breach of fiduciary duty. From a summary judgment ruling dismissing the claims against the trustee, Wilcox appeals.

## FACTS

Wilcox entered into an asset purchase agreement on September 5, 1985, with James P. Elia and Family Dentists Associated, P.A. (FDA). For the total purchase price of $400,000, Wilcox purchased the assets, records, inventory, and goodwill of the FDA dental practice on West Bethany Home Road in Phoenix, Arizona and the right to practice under the FDA name and to advertise jointly with Elia and FDA. The purchase of the ongoing dental practice by Wilcox from Elia and FDA was structured as a tax-free exchange to allow Elia and FDA to defer taxable realization of gain. On September 5, 1985, pursuant to an exchange trust agreement entered on that date, Elia and FDA deposited the dental practice assets and Wilcox deposited the purchase price of $400,000 with Donald A. Waldman, trustee. The assets deposited by FDA and Elia were distributed to Wilcox by the trustee on the same day. The remaining trust corpus, the $400,000 purchase price paid by Wilcox, was to be used to acquire like kind property, and the newly acquired like kind property was to be distributed to Elia and FDA.

After taking possession of the dental practice, Wilcox began examining the business records and discovered that, in his

opinion, the FDA dental practice had been operated in a manner that perpetrated a fraud upon its patients and their insurers, rendering valueless the goodwill of the practice, the use of the FDA name, and the right to jointly advertise. On October 18, 1985, Wilcox filed suit against Elia, his wife, and FDA charging them with racketeering, fraud, negligent misrepresentation and breach of contract, and requesting rescission of the asset purchase agreement.

Additionally, Wilcox sought to prevent disbursement of the $400,000 he had placed in trust. On October 15, 1985, counsel for Wilcox made a written request of the trustee to withhold disbursement to Elia and FDA of the money held in trust. The trustee responded by letter on October 16, 1985, stating that the proceeds in the trust were for the benefit of Elia and FDA and that he would not deviate from the instructions stated in the trust document unless furnished with a cash bond to protect him against the risk of liability for such deviation. Wilcox declined to post the bond.

The exchange trust agreement provided for the termination of the trust and disbursement of the funds deposited by Wilcox to Elia and FDA upon the happening of certain specified events, one of which was the failure to designate the like kind assets to be purchased with the trust funds on or before October 20, 1985. The exchange trust agreement terminated by its express terms on October 20, 1985, because no such designation was made.

On October 21, 1985, the trustee received a written demand from Elia and FDA, through their counsel, that the funds in trust be disbursed according to the terms of the exchange trust agreement. The trustee disbursed the funds to Elia and FDA on that same date.

On December 10, 1985, Wilcox amended the complaint to add a claim against the trustee for breach of fiduciary duties. Wilcox charged that it was a breach of fiduciary duty for the trustee to disburse the funds to Elia and FDA after he had been apprised of the claims of fraud being made against them. The trustee moved to dismiss the claim against him, arguing that he could not be held liable for disbursing the trust monies to the beneficiaries pursuant to the instructions given in the trust document merely because a claim had been made by Wilcox that the trust should be invalidated due to fraud. Treating the motion to dismiss as a motion for summary judgment, the trial court granted it and dismissed the claims against the trustee.

## BREACH OF FIDUCIARY DUTY CLAIMS

Wilcox argues that the trial court erred in failing to find that the trustee breached his duty to Wilcox by refusing to preserve the trust funds unless Wilcox provided a bond in his favor and by subsequently disbursing those funds to the beneficiaries designated in the trust agreement after learning that Wilcox had filed suit to void the trust for fraud. Wilcox points to various sections of the *Restatement (Second) of Trusts* (1959) as the basis of his claim of breach of fiduciary duty.

We first consider Wilcox's contention that the trustee breached a duty of loyalty to him as a beneficiary of the trust. Section 170 of the *Restatement* provides that the trustee is under a duty to the beneficiary to administer the trust solely in his interest. Section 183 provides that if there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them. Comment r to § 170 states that where a trustee is trustee of two trusts and he enters into a transaction between the two, he must justify the transaction as being fair to each trust and must apply to the court for instructions if the interests of the beneficiaries are so conflicting that he cannot deal fairly as to both trusts. Wilcox argues that in this instance the trustee failed to deal impartially with respect to all the beneficiaries and favored Elia and FDA at the expense of Wilcox.

We note in response to this argument that comment r to § 170 is applicable only where a trustee enters into a transaction between two trusts. In this instance the "trustee" did not enter into a transaction between two trusts. Rather, Wilcox, Elia, and FDA entered into the transaction and

used the trust mechanism to carry it out. As for the text of §§ 170 and 183, these general statements of duty do not assist us in resolving the practical dilemma of a trustee caught in a crossfire as was Waldman in this case.

The trustee argues that he cannot be held liable for disbursing the funds to Elia and FDA because he was merely following the instructions set forth in the trust agreement. He points out that Arizona law requires the trustee to follow the instructions given in the trust instrument. *Minnesota Title Co. v. Congress Industries, 116 Ariz. 549, 551, 570 P.2d 491, 493* (1977); *Estate of Charouleau,* 25 Ariz.App. 507, 510, 544 P.2d 1108, 1111 (1976). As with most rules, though, this one is not without exception. For example, § 167 of the *Restatement* provides that the trustee cannot merely follow the instructions of the trust instrument "if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust...." If the trustee knew or should have known of the existence of those circumstances, he is subject to liability if he does not apply to the court for permission to deviate from the terms of the trust.

Wilcox argues that his discovery of what he perceived to be fraud on the part of Elia in conducting his dental practice is the type of circumstance addressed in § 167 which, when made known to the trustee, would require the trustee to apply to the court to deviate from the terms of the trust. We disagree. For the reasons pointed out by the trustee in his answering brief, it is readily apparent that § 167 has no application to the facts of this case.

Section 167 requires the trustee to seek leave to deviate from the terms of the trust only when unforeseen circumstances would prevent the purposes of the trust from being accomplished. It is clear from reading the comments to § 167 that the section addresses itself to situations in which the settlor has left instructions on how the trust property is to be invested or used for the benefit of the beneficiaries and the changed circumstances render such investment or use unwise. The purpose of the trust in this case was merely to transfer the assets that the parties to the asset purchase agreement had agreed to exchange and to effectuate a tax-free exchange for the benefit of Elia and FDA. The unanticipated circumstances in this case in no way interfered with the accomplishment of those purposes.

More pertinent to the issue before us than any of the previously cited sections is § 226(A) of the *Restatement,* which provides:

> If the trustee pays or conveys the trust property or any part thereof to the person who by the terms of the trust is entitled to it, and the trust is later held to be invalid in whole or in part, the trustee is liable to the person entitled to the property, if, but only if, when he made such payment or conveyance he knew that the trust was invalid or had or should have had reasonable doubt as to its validity.

A trust may be invalidated if the settlor was induced to create the trust by fraud. *Restatement* § 333; comment (b) to § 226(A).

In this case, Wilcox has filed suit against Elia and FDA to invalidate the purchase asset agreement and the exchange trust agreement on the basis of fraud. For purposes of determining whether the trial court erred in dismissing the cause of action against the trustee, we must assume that Wilcox will be able to prove his case against Elia and FDA and that the trust will be invalidated. On an appeal from summary judgment, the facts are taken in the light most favorable to the party against whom summary judgment was taken. *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984). Having made the assumption that Wilcox will prevail on his fraud claim, we can sustain the trial court's dismissal of the suit against the trustee only if we either: (1) hold that Arizona does not adhere to § 226(A) of the *Restatement;* or (2) hold as a matter of law that it cannot be said that the trustee in this instance knew the trust was invalid

or should have had reasonable doubt as to its validity.

■ The trustee argues that § 226(A) is inconsistent with existing Arizona law and therefore should not be followed. Although the Arizona courts generally follow the *Restatement* of the law, they do not do so if a different rule has been pronounced in prior court decisions or legislative enactments. *Bank of America v. J. & S. Auto Repairs*, 143 Ariz. 416, 694 P.2d 246 (1985); *Burrell v. Southern Pac. Co.*, 13 Ariz.App. 107, 474 P.2d 466 (1970).

The specific statutes that the trustee points to as being inconsistent with § 226(A) are the Arizona statutes providing for prejudgment seizure of property. The trustee points out that the United States Supreme Court narrowed the scope and procedural availability of prejudgment remedies in its decisions in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Arizona's prejudgment remedy statutes allow the prejudgment seizure of property only after the obtaining of a court order and the posting of a bond for the value of the property taken. *See* A.R.S. §§ 12–2401 *et seq.;* 12–1303; 12–1524; and 12–1573.

■ Wilcox correctly argues in reply that nothing in the statutes restricting prejudgment seizure of property by someone not in possession of the property would prevent a trustee who is in possession from withholding property from the person entitled to it under the trust terms if he felt there were reasons requiring that he do so. Therefore, these statutes do not conflict with *Restatement* § 226(A). The difficult question for us to determine, though, is whether and in what circumstances a trustee should be required to retain the property and seek direction from the court rather than distribute it according to the instructions of the trust instrument. The answer lies in determining to what extent the trustee should bear the burden of determining the validity of the trust versus to what extent that burden should rest on the party seeking to prove the trust invalid. The availability of provisional remedies to the person seeking to invalidate the trust is certainly a factor for us to consider in making this determination.

Along with considering the availability of provisional remedies, we also consider the case of *Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 697 P.2d 674 (1985) in which attorneys who had made claims pursuant to a fee agreement to property held in trust for their clients sought to hold the trustee liable for disbursing the trust property to the clients who were beneficiaries under the trust agreement. The Arizona Supreme Court in *Markel v. Transamerica Title Ins. Co.*, 103 Ariz. 353, 442 P.2d 97 (1968) had held a trustee liable in a similar situation on a constructive trust theory, but now reversed that holding, stating as follows:

> Allowing the mere filing of a complaint to prevent the disbursal of a trust is too much remedy for too little wrong. This does not mean, however, that creditors of a trust are left without remedy or without the ability to halt the wrongful or premature disbursement from a trust.
>
> To this end, we believe that there are other, more appropriate, remedies. An injunction, for instance, was initially used in *Markel.* This procedural device could have prevented disbursal of trust proceeds, and its accompanying bond would have protected both Stewart [the trustee] and the clients from any frivolous action. *See* A.R.S. § 12–1801; 16 A.R.S. Rules of Civil Proc., Rule 65 (Injunctions). Garnishment is another method by which the lawyers could have halted Stewart's disbursal of the trust. *See Realty Exchange Corp. v. Phoenix Title & Trust Co.*, 15 Ariz.App. 199, 202, 487 P.2d 420, 423 (1971); A.R.S. § 12–1558(A) (Property subject to execution); Restatement (Second) of Trusts § 147 comment c (1959).

. . . .

Accordingly, we hold that a trustee may not be held liable, under a *Markel*-type constructive trust theory, for dis-

bursing trust funds to named beneficiaries after merely receiving a complaint alleging conflicting claims of ownership. 144 Ariz. at 288, 697 P.2d at 681. While the *Burch & Cracchiolo* case involved a claim against a trust made by persons who were not parties to the trust, its holding is of value in determining the type of information necessary to evoke a trustee's reasonable doubt as to the trust's validity pursuant to § 226(A).

Our review of other authorities has turned up very little to assist us. The issue whether a trustee should be held liable for payments or conveyances made under a trust subsequently held to be invalid apparently has received scant attention by the courts. *See* discussion and cases cited in 3 A. Scott, *Law of Trusts* § 226.1 (1967). The difficulties in determining when the trustee should be held liable are discussed in Schuyler, *Payments Under Void Trusts*, 65 Harv.L.Rev. 597 (1952). As noted previously, the *Restatement* published in 1959 has taken the position at § 226(A) that the trustee should not be held liable unless he knew the trust was invalid or "had or should have had reasonable doubt as to its validity." Apparently there has only been one case to date, *Cloud v. United States Nat'l Bank*, 280 Ore. 83, 570 P.2d 350 (1977) citing to § 226(A) of the *Restatement* and considering the issue of the knowledge required by the trustee in order for him to be held liable.

The *Cloud* case did not involve a question of the validity of a trust but involved an analogous problem of whether the trustee should have known that the settlor's instructions to disburse funds from the trust were void or voidable due to incompetence or undue influence. The court found no reason to distinguish between payments made under a facially valid trust agreement and payments made under a facially valid withdrawal by a settlor under the trust agreement. The court adopted the position of § 226(A) and interpreted the provision as allowing the trustee to rely on the presumption that the instrument is valid unless he has reason to believe otherwise. The court went on to find liability on the part of the trustee only in the instance of the settlor's last withdrawal from the trust where the trustee witnessed the settlor's condition at the moment she executed instructions for release of funds and her condition was such as to raise a serious question concerning her competence.

In the case presented before us, there are no facts in the record suggesting that the trustee had personal knowledge regarding any of the allegations of fraud made in Wilcox's complaint.[1] Nor is this a case in which the trust is facially invalid. The only factor bearing on whether the trustee should have had reasonable doubt as to the trust's validity is that he was told by Wilcox that he was suing to invalidate the agreements he had with Elia and FDA, and he may have been aware of Wilcox's specific allegations of fraud by seeing a copy of the complaint. Applying the same reasoning that was used in the *Burch & Cracchiolo* case, we find that the mere filing of a complaint challenging the validity of a trust, in the absence of other factors, would not cause the trustee to have reasonable doubt as to the validity of the trust so as to subject the trustee to liability for payments made. The settlor who was challenging the validity of the trust had various remedies at his disposal to protect his interests in the property being held in trust. He could not shift responsibility to the trustee for questioning the validity of the trust by a mere filing of a complaint. This practical approach in our opinion is not inconsistent with the general statement of *Restatement* §§ 170, 183 and 226A.

For the reasons stated herein, we affirm the ruling of the trial court dismissing the claims against the trustee.

### ATTORNEYS FEES

We now turn to the final issue raised on appeal, whether the trial court

---

1. We note that the trustee also happened to be the attorney for Elia and FDA, representing them in the sale of the dental assets, but this fact of itself would not cause him to have personal knowledge regarding any of the allegations of fraud.

**538**

abused its discretion in awarding attorney's fees under A.R.S. § 12–341.01. Subsection (A) of the statute provides that the court "may" award reasonable attorney's fees to the successful party in contested actions arising out of contract. Subsection (B) provides that the fee award should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense and that the award may not exceed the amount paid or agreed to be paid. The awarding of attorney's fees under the statute is discretionary with the trial court. *Autenreith v. Norville,* 127 Ariz. 442, 622 P.2d 1 (1980). The court of appeals will not substitute its discretion for that of the trial court where the record contains a reasonable basis for the exercise of that discretion. *Solar–West, Inc. v. Falk,* 141 Ariz. 414, 687 P.2d 939 (App.1984).

After considering the request for $6,162 in attorney's fees, the trial court awarded the trustee the sum of $5,000. Wilcox argues that it was an abuse of discretion for the trial court to award any attorney's fees in this case. He argues that, since the case presented novel issues never before litigated in this jurisdiction regarding the effect of § 226(A) of the *Restatement (Second) of Trusts,* no attorney's fees should have been assessed against him.

In *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 694 P.2d 1181 (1985), the Arizona Supreme Court listed several factors to assist trial courts in determining whether attorney's fees should be awarded under A.R.S. § 12–341.01. Among those factors are "the novelty of the legal question presented, and whether such claim or defense had previously been adjudicated in this jurisdiction." *Id.* at 570, 694 P.2d at 1184. The court did not state that any one particular factor was necessarily determinative of whether fees should be awarded, and the trial court should consider all the relevant factors in exercising its discretion. The trial court's decision will be upheld unless there exists no reasonable basis in the record upon which its decision could have been made.

■ While certain factors militated against an award of attorney's fees in this

case, it is not clear that all of the factors did so. Most noteworthy is the fact that Wilcox had various alternatives available with which he could have totally avoided litigation concerning whether the trustee should have disbursed the trust funds. We note in this case that the trial court exercised its discretion to reduce the amount of fees requested by the successful party. We cannot say that there was no reasonable basis to support the award that was given. We find no abuse of discretion by the trial court.

■ Wilcox makes two other attacks on the attorney's fee award which we dispense with quickly. Wilcox argues that no showing was made in the record that the trustee paid or agreed to pay attorney's fees as required by A.R.S. § 12.341.01(B). This contention is not borne out by the record, which contains the sworn affidavit of counsel stating that Waldman had agreed to pay the legal fees incurred. Wilcox argues that the trustee has no liability to pay attorney's fees because he had an agreement with Elia to indemnify him for any attorney's fees incurred. As Division 2 of this court, however, has held in *Catalina Foothills Ass'n v. White,* 132 Ariz. 427, 646 P.2d 312 (App.1982), the fact that fees may ultimately be borne by third parties pursuant to an insurance or indemnity agreement does not prevent the successful party from meeting the requirements of A.R.S. § 12–341.01(B), entitling him to an award of attorney's fees against the unsuccessful party to the litigation.

Appellees Waldman also request attorney's fees on appeal pursuant to A.R.S. § 12.341.01. In the exercise of our discretion, we award appellees attorney's fees on appeal in an amount to be determined after appellees' compliance with the provisions of Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

Affirmed.

CONTRERAS and FIDEL, JJ., concur.