912 P.2d 1309

**PREMIER FINANCIAL SERVICES,**
**Judgment Creditor–Appellee,**

v.

**CITIBANK (ARIZONA) and Jacque**
**Rosholm, Garnishees–**
**Appellants.**

No. 1 CA–CV 93–0096.

Court of Appeals of Arizona,
Division 1, Department D.

July 27, 1995.

Review Denied March 19, 1996.

Gammage & Burnham, P.L.L.C. by Kevin J. Blakley, Ellen Harris Hoff, Phoenix, for judgment creditor-appellee.

Burch & Cracchiolo, P.A. by Andrew Abraham, Jack Daniel Klausner, Phoenix, for garnishee-appellant Citibank.

Francis P. Smith, Phoenix, for garnishee-appellant Rosholm.

## OPINION

CONTRERAS, Judge.

Southwest Savings and Loan Association, F.A. ("Southwest") obtained a judgment on a garnishment for $86,461.40 against garnishees Citibank of Arizona ("Citibank") and Jacque Rosholm. This judgment satisfied a previously obtained deficiency judgment by Southwest against Jacque's parents, Harry and Margie Rosholm, in which the trial court had found that certain funds held by Jacque Rosholm had been fraudulently conveyed to her by her parents. The trial court also concluded that Citibank had been put on notice regarding the questionable ownership of the funds. Accordingly, it entered judgment against Citibank because the bank had paid over the funds to Jacque, its then account holder of record, rather than holding the funds until the court determined who was entitled to the funds. Both Jacque Rosholm and Citibank appeal the garnishment judg-

ment obtained against them by Southwest.[1] Jacque raises the following issues on appeal: (1) whether the evidence on the issue of fraudulent conveyance was sufficient to support the judgment against her; (2) whether the trial court erred in denying her motion to reopen the hearing to produce additional evidence; and (3) whether the trial court abused its discretion in rejecting a stipulation of the parties that Jacque had paid Citibank's attorney's fees.

The sole issue Citibank raises in its appeal is whether the trial court erred in concluding that Citibank was liable for failing to hold the funds in question. We affirm the trial court's judgment against Jacque Rosholm but reverse the judgment against Citibank.

## I. FACTS AND PROCEDURAL HISTORY

The underlying cause of action involved the judicial foreclosure of a deed of trust Southwest had received from Harry and Margie Rosholm for refinancing purposes. In a formal judgment filed April 4, 1991, the trial court entered a decision on the debt, ordered foreclosure and sale of the refinanced property, and allowed a deficiency judgment for any amount not satisfied from the sale proceeds.

The garnishment proceedings that are the subject of this appeal stem from Southwest's attempts to collect the deficiency judgment. Southwest initially served a writ of garnishment on Citibank in November of 1991. At that time, Citibank informed Southwest's attorneys that Harry and Margie Rosholm had recently closed their accounts. Southwest then dismissed the garnishment and subpoenaed Citibank's records for Harry and Margie Rosholm. These records established that a $100,000 certificate of deposit had been maintained in the names of Harry and Margie Rosholm from July of 1987 until February 5, 1991, immediately prior to the time that the trial court had made its ruling to allow a deficiency judgment against the Rosholms. These Citibank records did not reveal, however, what had happened to the certificate of deposit.

Southwest's attorney called to inquire as to what had happened to the certificate of deposit. A Citibank employee, Jackie Janic, responded that it still had the certificate. Southwest then filed another garnishment proceeding against Citibank. After receiving the second writ of garnishment, Ms. Janic called Southwest's attorney and confirmed that it was holding the certificate of deposit. Ms. Janic called back later and stated that Harry and Margie Rosholm were merely contingent beneficiaries on the certificate of deposit and that the trustee who had held the present rights to the account was someone else. Ms. Janic declined to tell Southwest the name of the trustee on the certificate.

Southwest subsequently refused to dismiss the garnishment and required Citibank to file an answer. After Citibank answered that it was not indebted to Harry and Margie Rosholm, Southwest filed its objection on April 10, 1991 and requested a hearing. Southwest discovered that Citibank had voided the original certificate of deposit on February 5, 1991 and reissued it as a trust account, listing Jacque Rosholm as trustee for beneficiaries Harry and Margie Rosholm. Then, on April 13, 1992, while the writ of garnishment against Citibank was still pending, Jacque requested that Citibank allow her to withdraw all the money from the certificate of deposit. Jacque's withdrawal of the funds occurred a few months short of the five-year maturity date and, therefore, she incurred a penalty of almost $2,000 for the early withdrawal.

Southwest also obtained a writ of garnishment against Jacque Rosholm and attempted to serve her. On April 9, 1992, believing that he had spotted Jacque and that she was trying to evade service of process, a process server left the papers at the back door of her

---

1. Southwest has been replaced as appellee in this appeal by its receiver, which is currently Premier Financial Services.

veterinary clinic and called out that he was serving her. Although the woman served was not Jacque, the papers which had been served eventually came to Jacque's attention. On April 17, 1992, she filed an answer to the writ of garnishment, avowing that she was not indebted to her parents, the judgment debtors. In her answer, Jacque did not question the sufficiency of service upon her and indicated that she had been served on April 13, 1992.

Southwest filed an objection to Jacque's answer and requested a consolidated hearing for the two garnishment proceedings. This request was granted by the trial court. Southwest deposed Jacque two days before the hearing. Jacque sought no continuance of the hearing and proceeded representing herself.

At the hearing, Jacque presented her own testimony and that of her father, attempting to establish that the money in the certificate of deposit was rightfully hers and had not been fraudulently conveyed to her by her parents. She testified that the money in the certificate was money that she had given to her parents in 1984, when she was diagnosed with cancer. She stated that she had wanted her parents to be able to make use of the money both on her behalf and after her death and thought this would be easier if the money was in their name. She also contended that the later change in the designation on the account had nothing to do with the pending lawsuit against her parents. Instead, the change had been made both because her parents were moving and she needed to have easy access to the money, and because she had recently learned that she could achieve the result of making the money accessible to her parents at her death by setting the account up as a trust account. Additionally, Jacque testified that she had loaned her parents in excess of $100,000 over the past few

years, and the evidence demonstrated that the designation of the certificate in her name was a repayment of that debt.

At the hearing, Jacque also sought to counter any impression that her withdrawal of the money in the certificate was in response to the writ of garnishment against her. Jacque presented testimony evidencing that she had mistakenly stated that she had become aware of the garnishment on April 13, 1992, because she had not actually seen the service of process until at least a couple of days later.

Jacque further denied that she had known about the writ of garnishment when she withdrew the funds. She argued that there was no proof, even if she had received the writ on April 13, 1992, that she had received it *before* she took the money out of the bank account. Finally, Jacque attempted to prove at the hearing that she had cashed in the certificate of deposit despite the substantial penalty fee because she required the money to complete a real estate transaction.

The trial court concluded that Southwest had met its burden of proving the elements of a fraudulent conveyance pursuant to Ariz. Rev.Stat.Ann. ("A.R.S.") section 44–1004 by clear and satisfactory evidence. The court also found that the money deposited in the certificate of deposit in July of 1987 had belonged to the judgment debtors, Harry and Margie Rosholm, and that the transfer *to Jacque had been made with actual intent to hinder, delay or defraud Southwest in violation of the statute.*

 In making this determination, the trial court relied upon the following "badges of fraud": [2]

The transfer was to Judgment Debtors' daughter. Although "insider" as used in A.R.S. § 44–1004(B)(1) is not defined, Jacque Rosholm as Judgment Debtors' daugh-

---

**2.** "Badges of fraud" are " 'facts which throw suspicion on a transaction, and which call for an explanation.' " Although they " 'do not of themselves or per se constitute fraud, ... they are facts having a tenancy [sic] to show the existence of fraud, ... [and] their value as evidence is relative and not absolute.' " Further, " '[w]hen

... several are found in the same transaction, strong, clear evidence will be required to repel *the conclusion of fraudulent intent.' " Torosian v. Paulos,* 82 Ariz. 304, 312, 313 P.2d 382, 390 (1957) (quoting *Humbird v. Arnet,* 99 Mont. 499, 44 P.2d 756, 761 (Mont.1935)).

ter certainly is the equivalent of an "insider" as that term is commonly used.

Judgment Debtors had been sued prior to the transfer.

The transfer occurred shortly before the trial court ruled on the parties' motions for summary judgment.

The transfer rendered Judgment Debtors presumptively insolvent. *See* A.R.S. § 44–1002(B).

On the same day Jacque Rosholm had received notice of the service of the writ of garnishment, the funds were withdrawn and placed beyond the reach of Judgment Creditor. In withdrawing the funds prior to maturity of the CD account, a substantial penalty was incurred.

Thus, the court found that the evidence presented by Jacque and her father was "insufficient to overcome this inference [established by the 'badges of fraud'] of actual intent to defraud, hinder or delay creditors."

As to Citibank, the trial court found that its receipt of information from Southwest's attorney, that the funds had potentially been fraudulently transferred by the judgment debtors, Harry and Margie Rosholm to their daughter, made Citibank liable for failing to hold the funds until the court could decide who was entitled to them.

Before the trial court entered a formal judgment, Jacque obtained counsel and filed a motion to reopen the hearing and attached copies of additional documents that she sought to present. The trial court denied the motion to reopen and entered final judgment.

Sometime after the notices of appeal were filed, the parties submitted a new form of judgment to the trial court that they stipulated should be entered *nunc pro tunc*. The new judgment ordered Jacque to pay Citibank's attorney's fees, a matter which had not been considered previously by the trial court. Although the trial court apparently signed the new form of judgment and entered it *nunc pro tunc*, it stated in its order dated October 29, 1992 that the "[s]igning of

the proposed form of Judgment will be held in abeyance until after the court has ruled on what amount, if any, in attorney's fees to award Judgment Creditor against Garnishee Citibank."

## II. JACQUE ROSHOLM'S APPEAL

### A. Sufficiency of Evidence of Fraudulent Conveyance

Jacque Rosholm argues on appeal that the evidence presented in this case was insufficient to prove a fraudulent conveyance. We disagree. This Court must view the evidence in a light most favorable to supporting the trial court's judgment. *Yano v. Yano*, 144 Ariz. 382, 384, 697 P.2d 1132, 1134 (App.1985). It is not our prerogative to weigh the evidence and determine the credibility of witnesses; that role belongs to the trial court. *Imperial Litho/Graphics v. M.J. Enterprises*, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986). Moreover, the trial court must also draw a distinction between clear and convincing evidence and evidence that merely preponderates. *Webber v. Smith*, 129 Ariz. 495, 498, 632 P.2d 998, 1001 (App.1981). Thus, we will not disturb a judgment if there is evidence to support it. *Yano*, 144 Ariz. at 384, 697 P.2d at 1134.

Jacque Rosholm correctly points out that fraud is never presumed, but must be proven by clear and satisfactory evidence. *Transamerica Ins. Co. v. Trout*, 145 Ariz. 355, 360, 701 P.2d 851, 856 (App.1985); *Kingsbury v. Christy*, 21 Ariz. 559, 562, 192 P. 1114, 1115 (1920). Direct proof of fraud, however, is not required. A party can meet its burden of proof by showing circumstantial evidence through which fraud may reasonably be inferred. *Ollason v. Glasscock*, 26 Ariz. 193, 202, 224 P. 284, 287 (1924).

It is apparent from an examination of the record in this case that there were several "badges of fraud" casting suspicion about whether a fraudulent conveyance had taken place. Although Citibank held a $100,000 certificate of deposit in the names of Harry and Margie Rosholm for a number of years,

the Rosholms changed the name on the certificate after a lawsuit was filed against them and while a motion for summary judgment was pending against them.

Further, the name that the Rosholms placed on the certificate was that of their daughter Jacque. Jacque left the certificate untouched until Southwest attempted to garnish those funds. Additionally, Jacque's withdrawal of the funds at that time occurred shortly before the expiration date of the certificate, thereby requiring her to incur a substantial penalty for early withdrawal. Finally, the trial court found that, once Jacque withdrew the funds in the certificate, the elder Rosholms were rendered insolvent.

Although Jacque Rosholm maintains that she was entitled to a presumption of honesty concerning the transaction between her parents and herself, we conclude that the "badges of fraud" shown to exist in this case have overcome this presumption. *See Sheehan v. Pima County*, 135 Ariz. 235, 238, 660 P.2d 486, 489 (App.1982) ("[A] presumption disappears entirely upon the introduction of any contradicting evidence . . . .").

■ Jacque also argues that the trial court erred in finding that the "badges of fraud" created a presumption of fraud, thus improperly shifting the burden of proof to her. We disagree and find that the trial court fully complied with the procedure described in *Torosian*, 82 Ariz. at 312, 313 P.2d at 388. The court inferred fraud from the circumstances absent sufficient explanation to dispel that inference.

■ Finally, Jacque seems to argue that the testimony presented by both herself and Harry Rosholm regarding ownership of the funds was sufficient to dispel the inference of fraud. We do not agree; a trial court is not bound to accept even the uncontradicted evidence of a disinterested party. *In re Wainola's Estate*, 79 Ariz. 342, 346, 289 P.2d 692, 695 (1955). Thus, the trial court did not err in concluding that the transfer of the certificate of deposit to Jacque was a fraudulent conveyance.

## B. *Denial of Motion to Reopen Hearing*

Jacque next contends that the trial court abused its discretion in refusing to grant her Motion to Reopen to allow her to produce new documentary evidence consisting mainly of checks that she had written to her father. Jacque maintains that this evidence corroborated her testimony that the funds in the Citibank certificate of deposit belonged to her.

Jacque originally argued that a new hearing was necessary because: (1) She had had insufficient time to prepare; (2) the documents for which she had searched were hidden in a voluminous array of materials; (3) she had not understood the issues until her deposition two days before the hearing; and (4) she had not been able to hire an attorney on the short notice provided her.

The trial court denied the Motion to Reopen, concluding that the reasons given were insufficient to undercut the finality of the judicial proceeding. The court also found that the record demonstrated that Jacque had adequate notice of the hearing pursuant to statutory requirements. The transcript of the hearing revealed that she had been aware of the issues when she came to the hearing. The trial court noted that Jacque never stated that she wanted to obtain counsel, nor did she request a continuance either to obtain counsel or to prepare for the hearing.

■ On appeal, Jacque argues that, because the new evidence that she sought to present addresses the core issue of whether the money in the certificate had always belonged to her, equity requires that she be allowed to present it to assure a judgment on the merits. We are not persuaded. First, Jacque did not argue to the trial court, as she is now contending on appeal, that it could grant relief pursuant to Rule 59(b) of the Arizona Rules of Civil Procedure, even when no grounds for relief pursuant to 59(a) were shown. We cannot consider issues and theories that were not presented to the court below. *Richter v. Dairy Queen of Southern*

*Arizona, Inc.,* 131 Ariz. 595, 596, 643 P.2d 508, 509 (App.1982).

 Second, copies of the documents that Jacque sought to submit were attached to her Motion to Reopen and consisted mainly of checks written by her to her father between 1979 and 1985. This evidence does not show the *reason* that these checks were written, nor is it consistent with the argument advanced at the hearing that Jacque had turned her money over to her father in 1984. We conclude that the trial court correctly refused to reopen the hearing to allow this evidence.

C. *Failure to Award Attorney's Fees in Judgment Nunc Pro Tunc*

 Finally, Jacque objects to the trial court's deletion of language included in the form of judgment *nunc pro tunc,* stating that Jacque has already paid Citibank's attorney's fees. Jacque believes that this provision must be included in a formal judgment in order for her to receive reimbursement if she prevails in this appeal. We find that Jacque is not entitled to relief on this issue because she has not prevailed on appeal.

 Additionally, assuming that the trial court had jurisdiction to sign and enter the judgment *nunc pro tunc,* it could not have used a *nunc pro tunc* judgment to require Jacque to pay Citibank's attorney's fees because the trial court had not yet considered that issue when it made the rulings from which Jacque now appeals. *See Wood's Pharmacy v. Kenton,* 50 Ariz. 53, 56, 68 P.2d 705, 706 (1937) (" '[T]he office of a *nunc pro tunc* order is to record now for then what actually did occur.' "). We acquire no jurisdiction to review rulings unless they are contained in the notice of appeal. *Lee v. Lee,* 133 Ariz. 118, 124, 649 P.2d 997, 1003 (App. 1982).

### III. *CITIBANK'S APPEAL*

 Next, we turn to Citibank's request that we find that the trial court erred in ruling that the telephone call from Southwest's attorney alleging a possible fraudulent conversion was sufficient to require Citibank to hold the funds in the account until the trial court decided who was entitled to them. The trial court's ruling was one of law, and this Court is not bound by the trial court's decision on a matter of law. *Arizona Bd. of Regents v. Phoenix Newspapers, Inc.,* 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).

 In making its decision that Citibank, the garnishee, was liable for failing to hold the funds, the trial court did not do so on the basis that the Rosholms were beneficiaries of the trust account. A garnishee is not liable unless it owes a clear, ascertainable debt to its judgment debtors, a debt *not* contingent upon other events. *Able Distrib. Co., Inc. v. James Lampe, Gen. Contractor,* 160 Ariz. 399, 402, 773 P.2d 504, 507 (App.1989). By contrast, in the present case, the trust was revocable. Hence, any debt owed by the garnishee to the elder Rosholms would have been contingent upon Jacque's death.

After rejecting the argument that a judgment creditor may garnish the interests of a contingent beneficiary, the trial court nevertheless found Citibank liable because of the information it received alleging that the elder Rosholms had fraudulently conveyed the certificate of deposit to Jacque and, therefore, were still the real owners. The trial court stated its reasoning as follows:

> But for the information received by Ms. Janic from counsel for Judgment Creditor after service of the writ and prior to the withdrawal of the funds in the CD account, the Court would agree with Citibank's position. However, upon Ms. Janic's receipt of the information from Mr. Blakley that the funds may have been fraudulently transferred by Judgment Debtors, the Court is of the opinion that Citibank was put in the same position as the bank in *Valley Bank and Trust Company v. Parthum,* 47 Ariz. 496, 56 P.2d 1342, rehearing 48 Ariz. 87, 59 P.2d 335 (1936). In that case, the Arizona Supreme Court held that where a garnishee-bank is put on notice

that the funds in an account in the name of a third-party may belong to the judgment debtor, the garnishee-bank has a duty to *hold the account until the court decides whose account it is*. Failure to do so may result in liability for the garnishee-bank to the judgment creditor if it is determined that the judgment debtor had an interest in the released funds.

We conclude that the trial court incorrectly applied the holding of *Parthum* to this case. It should be noted that the legal principle underlying the *Parthum* opinion is, that "if the garnishee has actual knowledge, or has knowledge of facts putting him upon notice, that the title to property *is* in defendant, although apparently in another, he cannot be excused because of failure to retain it." *Parthum*, 47 Ariz. at 500, 56 P.2d at 1343 (emphasis added). The *Parthum* Court specified that the garnishee would be liable for not retaining funds if the garnishee had actual knowledge or knowledge of facts seeming to show that ownership of the property "is" in the defendant. *Parthum* does not impose liability merely where a party alleges that the judgment debtor *"may"* be the owner.

Specifically, in *Parthum*, the trial court presented the garnishee with a writ of garnishment stating that funds in a third party's account *actually* belonged to the judgment debtor. By contrast, the writ of garnishment in this case provided no similar information. Citibank had only orally expressed suppositions and accusations by Southwest's counsel that he suspected the funds in Jacque's account belonged to her parents, the judgment debtors. Although Citibank's records revealed that these allegations were possibly true, they were no more certain than that. This does not amount to actual notice or knowledge by Citibank.

■ Finally, we believe that *Parthum* is no longer the law pursuant to the Arizona Legislature's passage of the adverse claimant statute, A.R.S. section 6–233. Subsection (A) of this section provides that:

 Notice to a bank of an adverse claim is not sufficient to require the bank to refuse to honor the order of any person to whose credit the account stands or who has prior authority on the books of the bank to operate the account, nor is such notice sufficient to require the bank to recognize the adverse claimant in any respect, unless the bank is directed to do so by a lawful order of the court in the United States. In the absence of such court order the bank may refuse to honor the order on the account by any person.

*Id.* The purpose of A.R.S. section 6–233 is to protect a bank against liability to its depositor should the depositor refuse to honor his order and against liability to the adverse claimant should the claim prove valid. *Arizona Bank v. Wells Fargo Bank, N.A.*, 148 Ariz. 136, 139, 713 P.2d 337, 340 (App.1985).

■ We see no reason why a judgment creditor seeking to garnish the funds of a judgment debtor in the bank account of a third person would not be governed by the adverse claimant statute. Additionally, we note that other courts have reached this result. *E.g.*, *Staley v. Brown*, 244 Miss. 825, 146 So.2d 739, 742 (1962) ("[A] judgment creditor seeking to garnishee funds of a judgment debtor in the bank account of a third person is governed by the adverse claimant statute."); *Phil Grossmayer Co. v. Campbell*, 214 Or. 265, 328 P.2d 320, 325 (1958) (Adverse claimant statute "is applicable in all cases when 'an adverse claim to a deposit' is made.").

■ We also find support for our decision in two Arizona cases that deal with whether a trustee is liable for disbursal of monies payable under a trust agreement where there is an adverse claim to the trust proceeds. In *Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 697 P.2d 674 (1985), the Arizona Supreme Court held that the mere filing of a complaint alleging a conflicting claim to prevent the disbursal of a trust is "too much remedy for too little wrong." 144 Ariz. at 288, 697 P.2d at 681. The *Burch* Court further stated that garnishment was a method that the lawyers could have used to halt the disbursal of the trust. *Id.* If no

judgment has been entered, however, a writ cannot be issued until the judgment creditor provides a bond payable to the judgment debtor in the amount of the debt claimed to cover any damages, where the judgment creditor fails to show that he is entitled to the funds he is attempting to garnish. Similarly, we believe that the bond requirements are applicable here because Southwest did not obtain a judgment against Jacque Rosholm prior to the garnishment of her certificate of deposit.

In the later case of *Wilcox v. Waldman,* 154 Ariz. 532, 744 P.2d 444 (App.1987), this Court concluded that exceptions exist to the rule stated in *Burch. Id.* at 537, 744 P.2d at 449. We pointed out that a trustee would be liable for paying out funds under a trust agreement if the trust was facially invalid or if the trustee knew that the trust was invalid for reasons including fraud. *Id.* The *Wilcox* Court emphasized once again, however, that the mere filing of a complaint challenging the validity of a trust would not cause the trustee to have reasonable doubt as to the validity of the trust so as to subject the trustee to liability for payments made. *Id.*

We conclude that what is said in *Burch* and *Wilcox* concerning the duties of the trustee should apply equally in the garnishment situation to a garnishee unless the garnishee is itself the recipient of the fraudulent conveyance. Mere allegations that a fraudulent conveyance has occurred are insufficient to make the garnishee liable for failing to withhold the funds. The garnishee must either have personal knowledge of the fraud or have knowledge of facts from which a reasonable person would conclude that the fraud has occurred.

This decision is not inconsistent with the provisions of A.R.S. section 44-1007(A)(1). That statute allows garnishment to be employed against a fraudulent transferee or the recipient of a fraudulent obligation. *Id.*

### IV. ATTORNEY'S FEES ON APPEAL

A.R.S. section 12-1580(E) provides that a prevailing party may be awarded reasonable attorney's fees. *Id.* We award attorney's fees to each of the prevailing parties to this appeal in an amount to be determined upon compliance with the requirements of Rule 21(c), Arizona Rules of Civil Appellate Procedure. We award Citibank its attorney's fees against Southwest's receiver, Premier Financial Services, and we award the receiver its attorney's fees against Jacque Rosholm.

### V. CONCLUSION

We affirm the judgment against Jacque Rosholm and reverse the judgment against Citibank.

GERBER, P.J., and VOSS, J., concur.