NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

SILVERDOVE ENTERPRISES, INC. DEFINED BENEFIT PENSION
PLAN, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

JOHN GREENBANK and CAROL A. GREENBANK,
*Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 21-0215
FILED 12-30-2021

---

Appeal from the Superior Court in Maricopa County
No. CV2018-003140
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

---

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Robert A. Royal, Todd Thomas Lenczycki
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Timothy H. Barnes, P.C., Phoenix
By Timothy H. Barnes
*Counsel for Defendants/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1        Silverdove Enterprises, Inc. Defined Benefit Pension Plan ("Silverdove") appeals the superior court's judgment in favor of John Greenbank and Carol A. Greenbank and related rulings. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Bonnie Vanzant, trustee of Silverdove, was married to John Greenbank until they divorced in 1984. Vanzant was the sole owner of Silverdove Enterprises, Inc. and Silverdove was the defined benefit plan of that company.

¶3        Greenbank was the sole owner of Energetics, Inc. Energetics, Inc. created a profit-sharing plan in 1986, and amended and restated the plan in 2016. The restated plan was entitled Energetics, Inc. Restated Profit Sharing Plan ("ERPSP"). Greenbank was the sole beneficiary of, and only participant in ERPSP. Energetics, Inc. was ERPSP's owner and administrator. Section 12.3 of ERPSP, entitled "No Title to Assets," provided that beneficiaries of ERPSP would have no "right to, or interest in, any assets of the Trust except otherwise provided by the terms of the Plan."

¶4        Silverdove Properties, LLC ("Silverdove Properties") was a real estate investment company organized and owned by ERPSP and Silverdove for the purpose of making joint real estate investments.

¶5        From 2013 to 2017, the asset value of ERPSP ranged from $1,228,842 to $1,106,500. Greenbank began taking disbursements from ERPSP in 2013.

¶6        In 2012, Silverdove filed a complaint against Greenbank in superior court alleging he misappropriated Silverdove's investment funds. Thereafter, Silverdove and Greenbank entered into a settlement agreement. Under the 2013 settlement agreement, which Silverdove's counsel drafted,

Greenbank had to pay Silverdove $424,626.30 plus interest from half of the proceeds of his investments. The settlement agreement's key provisions (set forth in paragraphs 8 and 9) provided that Greenbank was to list "all of Greenbank's investments (the "Investments") and other assets" in a verified affidavit and to pay Silverdove "one half of any payments that Greenbank receive[d] on any of the Investments" until the funds and interest were repaid. Greenbank's financial affidavit did not list ERPSP as an investment subject to the settlement agreement.

¶7            In 2015, Silverdove filed a second complaint against Greenbank in superior court alleging violations of the settlement agreement. This lawsuit resulted in a stipulated judgment, wherein the court found that Greenbank had violated the 2013 settlement agreement and ordered him to "specifically perform his obligations under the Settlement Agreement, including his obligation to produce sworn verified affidavits detailing a full and complete list of his investments and other assets to VanZant on a quarterly basis for at least one year beginning on June 30, 2015 and on a timely basis thereafter." The stipulated judgment specifically stated it did not resolve whether ERPSP was an investment subject to the settlement agreement.

¶8            In 2018, Silverdove filed a third complaint in superior court against Greenbank for breach of contract and for an accounting relating to the 2013 settlement agreement. The parties submitted a joint report asking the court to rule on several issues, and it agreed to do so. Silverdove filed a motion entitled "Motion For Court to Determine Applicability [of] Greenbank's Investments" which did not comply with Arizona Rule of Civil Procedure ("Rule") 56. In his response, Greenbank argued, among other things, that if the court accepted Silverdove's interpretation of the settlement agreement, the court must evaluate whether the settlement agreement was reasonably susceptible to more than one interpretation, and if it was, "the question of the parties' intent becomes a fact question which must be left to the trier of fact." The court ruled that distributions from ERPSP were subject to the 2013 settlement agreement's payment terms.

¶9            Greenbank moved for a new trial. The superior court granted the motion, overturning the court's ruling on the ERPSP issue. The court found that its previous ruling had been based on briefing that did not "articulate the appropriate standard . . . to be applied," and that the court had incorrectly made "a determination as a matter of law or determination that there were undisputed facts or no genuine issue of material fact."

**¶10**          Silverdove moved for summary judgment on the ERPSP issue. After briefing, the court denied the motion. It concluded there were genuine issues of material fact as to whether ERPSP was an investment for purposes of the 2013 agreement, the language of the 2013 settlement agreement was reasonably susceptible to more than one interpretation, and the interpretation was a determination for the trier of fact.

**¶11**          The matter proceeded to a bench trial. The parties submitted a joint pretrial statement. The parties stipulated that (1) "[t]he issue of whether the parties intended ERPSP's investments to come within the scope of the Settlement Agreement is a question of fact for the trier of fact to resolve"; and (2) "[c]ontested issues of law and fact the parties agree are material" include . . . "[w]hether Silverdove and [Greenbank] intended ERPSP's investments to come within the scope of the 10/11/13 Settlement Agreement."

**¶12**          After a bench trial, the superior court ruled that (1) ERPSP was not an investment subject to the settlement agreement; (2) Greenbank did not breach the settlement agreement by failing to remit fifty percent of the disbursements he received from ERPSP to Silverdove; and (3) Greenbank did not breach the 2013 settlement agreement or the 2015 stipulated judgment with respect to providing Silverdove with financial affidavits. The court found that the settlement agreement's language in paragraph 8 was "reasonably susceptible to more than one interpretation and therefore the final determination of the parties' intention is for the trier of fact." The court then found:

> Based on the evidence presented at the trial—namely during the negotiations of the Settlement Agreement the parties had not discussed whether [Silverdove] intended that ERPSP was to be included as an "Investment" under ¶ 8 (although [Silverdove's] principal had been aware of the existence of ERPSP since 1994 through mutual business dealings in Silverdove Properties), John Greenbank did not intend to include ERPSP as an "Investment" and ERPSP was not included on the list of investments in John Greenbank's October 29, 2013 Financial Affidavit—ERPSP was not intended by the parties to be an "Investment" within the meaning of Paragraphs 8 or 9 of the Settlement Agreement.

The court awarded Greenbank attorneys' fees.

¶13 Silverdove moved for a new trial, the superior court denied the motion, and Silverdove timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (3), and (5)(a).

## DISCUSSION[1]

I.    Parol Evidence

¶14 We review issues of contract interpretation de novo. *Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, 393, ¶ 19 (App. 2014). Whether a contract is reasonably susceptible to more than one interpretation is a question of law which we review de novo. *In re Est. of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005) (citations omitted).

¶15 The primary function of a court when interpreting a contract is "to enforce the meaning intended by the contracting parties." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993). "It is axiomatic that a contract must be construed as a whole, and each and every part must be read in the light of the other parts." *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 473 (1966) (citation omitted).

¶16 "Antecedent understandings and negotiations may be admissible . . . for purposes other than varying or contradicting a final agreement. . . . Interpretation is one such purpose." *Taylor*, 175 Ariz. at 152 (citing Corbin on Contracts §§ 576, 579, at 384, 412-13 (1960); Restatement (Second) of Contracts § 214(c)). When a party offers extrinsic evidence to aid in the interpretation of a contract, the court "first considers the offered evidence and, if [the court] finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Taylor*, 175 Ariz. at 154 (citations omitted). "The court must decide what evidence, other than the writing, is admissible in the interpretation process, bearing in mind that the parol evidence rule prohibits extrinsic evidence to vary or contradict, but not to interpret, the agreement." *Id.* at 152. "The meaning that appears plain and unambiguous on the first reading of a document may not appear nearly so plain once the judge considers the evidence." *Id.* at 154. The court may properly decide not to consider extrinsic evidence when the "asserted meaning of the contract language is so unreasonable or extraordinary that it is improbable that the parties actually subscribed to

---

[1]    Greenbank filed a cross appeal in this matter but did not raise any argument or file a brief in support of the cross appeal. Accordingly, we dismiss the cross appeal. *See* ARCAP 15(a)(4).

the interpretation asserted by the proponent of the extrinsic evidence." *Id.* at 153.

¶17        Silverdove argues the settlement agreement was not reasonably susceptible to more than one interpretation because the agreement required Greenbank to pay Silverdove one-half of any payments from all of his investments, and ERPSP was "admittedly an investment by Greenbank." It argues the superior court ignored the parties' objective intent and wrongly relied on Greenbank's parol evidence of his "secretive intent" to exclude ERPSP. Silverdove claims paragraph 8's language unambiguously reflects the parties' intention to include ERPSP's investments within the scope of the settlement agreement. The agreement provides:

> 8. <u>Financial Affidavit</u>. Contemporaneously with execution of this Agreement, John shall execute a sworn and verified affidavit detailing a full and complete list of all of **Greenbank's investments ("the Investments")** and other assets. Greenbank shall timely supplement this sworn and verified affidavit as the Investments and other assets change. A copy of the Financial Affidavit is attached as Exhibit B.

> 9. <u>Dollar-for-Dollar on Investment Payments</u>. Greenbank shall pay to [Silverdove] one half of any payments that Greenbank receives on any of **the Investments** and Greenbank will be entitled to the other half of any payments on the Investments until he has repaid in full the Missing Funds plus all applicable interest.

(Emphasis added.) In addition, the settlement agreement defines "Greenbank" as "John A. Greenbank."

¶18        ERPSP was not listed as an investment or asset on Greenbank's financial affidavit incorporated into the agreement. And paragraph 8 referred to "Greenbank's investments," with no mention of ERPSP. Further, Greenbank did not "admit" that ERPSP was an investment by Greenbank subject to the settlement agreement as Silverdove suggests. Silverdove cites to Greenbank's testimony to support its contention that "ERPSP . . . is admittedly an investment by Greenbank." The cited testimony, however, was that ERPSP owns investments, ERPSP is owned by Energetics, Inc., and Greenbank, as president of Energetics, Inc. controls ERPSP. Greenbank consistently maintained that ERPSP was a pension plan owned by Energetics, Inc. and that he did not personally own ERPSP's

investments. The language of the settlement agreement was reasonably susceptible to Greenbank's interpretation—that ERPSP was not an investment subject to the settlement agreement.

**¶19** Greenbank's extrinsic evidence included the following: Greenbank was the sole owner and president of Energetics, Inc., an Arizona corporation. Energetics, Inc. created a profit-sharing retirement plan, ERPSP, in 1986. Greenbank was the sole beneficiary of, and only participant in ERPSP. Energetics, Inc. was ERPSP's owner and administrator, not Greenbank. Section 12.3 of ERPSP, entitled "No Title to Assets," provided that beneficiaries of ERPSP would have no "right to, or interest in, any assets of the Trust except otherwise provided by the terms of the Plan." Greenbank never intended for ERPSP to be included as an investment subject to the settlement agreement because it was his retirement plan and "separate" from his personal investments. Greenbank never spoke with Vanzant or Silverdove's attorney about what investments to include in the financial affidavit. He did not discuss ERPSP with the attorney before signing the settlement agreement and never would have agreed to the settlement if he had been required to include ERPSP on the financial affidavit.

**¶20** The superior court did not err by considering extrinsic evidence to determine the parties' intent as to the investments that would be subject to the repayment schedule in the agreement. The evidence was not offered to "vary or contradict" the agreement, and Greenbank's asserted meaning of the contract language was not "so unreasonable or extraordinary that it is improbable that the parties actually subscribed to the interpretation asserted by [Greenbank]." *Taylor*, 175 Ariz. at 152-53.

II. Financial Affidavits

**¶21** Silverdove next argues Greenbank breached the settlement agreement and the 2015 stipulated judgment by failing to provide accurate and timely supplemental financial affidavits.

**¶22** "The trial judge makes factual determinations in the first instance, and we will sustain these findings unless they are clearly erroneous or unsupported by any credible evidence." *Federoff v. Pioneer Title & Tr. Co. of Ariz.*, 166 Ariz. 383, 388 (1990). The superior court found that Greenbank had not materially breached the settlement agreement or stipulated judgment by failing to provide Silverdove with financial affidavits. The court specifically found that Greenbank complied with the

stipulated judgment by providing affidavits for one year beginning in June 2015.

¶23 Paragraph A of the stipulated judgment required Greenbank to provide financial affidavits to Silverdove on a "quarterly basis for at least one year beginning on June 30, 2015 and on a timely basis thereafter." Paragraph 8 of the settlement agreement provided that "Greenbank shall timely supplement this sworn and verified affidavit as the Investments and other assets change."

¶24 Vanzant testified that Greenbank provided her quarterly affidavits for one year as required by the stipulated judgment. The last affidavit was dated March 29, 2016. Greenbank testified that he did not send additional updated financial affidavits thereafter because his investment assets had not changed significantly. According to Silverdove, Greenbank's "biggest mistake" was his failure to list Mortgages Limited on his financial affidavits. When questioned about why he did not include Mortgages Limited, Greenbank testified that the company had been in bankruptcy proceedings since 2012, and he "didn't expect anything from them." Greenbank and Vanzant were both creditors in the bankruptcy. And when Greenbank did receive payments from Mortgages Limited in 2014, 2016, and 2018, he remitted half to Silverdove.

¶25 The superior court's finding that Greenbank had not materially breached the settlement agreement or stipulated judgment was not clearly erroneous or unsupported by credible evidence. *See id.* at 388. "It is not our prerogative to weigh the evidence and determine the credibility of witnesses; that role belongs to the trial court." *Premier Fin. Servs. v. Citibank*, 185 Ariz. 80, 85 (App. 1995).

III. Greenbank's Motion for New Trial

¶26 Silverdove next argues that the superior court erred by granting Greenbank's motion for new trial and reversing its decision that distributions from ERPSP were subject to the 2013 settlement agreement's payment terms. "We review an order granting a new trial under a more liberal standard than an order denying one, and we will not overturn the order absent a clear abuse of discretion." *State Farm Fire & Cas. Co. v. Brown*, 183 Ariz. 518, 521 (App. 1995).

¶27 The superior court's ruling granting Greenbank's motion for new trial stated:

> **THE COURT FINDS** Commissioner French's ruling was based upon the briefing presented to her at that time which did not articulate the appropriate standard needed to be applied.
>
> Furthermore, based upon the briefing presented to this Court in the Motion for New Trial,
>
> **THE COURT FINDS** that there was a determination as a matter of law or determination that there were undisputed facts or no genuine issue of material fact. For those reasons, the Court believes it is appropriate to grant the motion.

**¶28**        Silverdove's "Motion For Court to Determine Applicability [of] Greenbank's Investments" cited to and relied upon various facts but did not comply with Rule 56 by including a separate Rule 56(c)(3)(A) statement of facts with "the specific part of the record where support for each fact may be found." Nor was the motion supported by affidavits or other testimony. *See* Rule 56(c)(5), (6). As noted *supra* paragraph 10, after the superior court granted Greenbank's motion for new trial, Silverdove filed a motion for summary judgment on the determination of the ERPSP as an investment in compliance with Rule 56. And thereafter, the court concluded there were genuine issues of material fact as to whether ERPSP was an investment for purposes of the 2013 agreement. It was within the sound discretion of the superior court to grant the motion for new trial.

IV.    Silverdove's Motion for New Trial

**¶29**        Finally, Silverdove argues the superior court abused its discretion by denying its motion for new trial. We review the denial of a motion for new trial for an abuse of discretion. *First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015). "To find an abuse of discretion, there must either be no evidence to support the superior court's conclusion or the reasons given by the court must be clearly untenable, legally incorrect, or amount to a denial of justice." *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006) (citation and internal quotation marks omitted).

**¶30**        Silverdove requested a new trial on several grounds, including that there was new evidence that the promissory note collateralizing the settlement agreement was worthless. *See* Rule 59(a)(1)(D). The superior court summarily denied the motion.

¶**31**     The superior court "may" grant a new trial on certain grounds materially affecting the moving party's rights, including "newly discovered material evidence that could not have been discovered and produced at trial with reasonable diligence." Rule 59(a)(1)(D). "[T]o grant a motion for a new trial on the grounds of newly discovered evidence, it must appear to the trial court that such evidence would probably change the result upon rehearing." *Roberts v. Morgensen Motors*, 135 Ariz. 162, 165 (App. 1982).

¶**32**     Silverdove argues the superior court abused its discretion by denying the motion for new trial because it provided the court with evidence that "before trial MRC Refining was extinct and its promissory notes had no value," which contradicted Greenbank's trial testimony that MRC Refining was a viable company. According to Silverdove, the new evidence would have changed the superior court's judgment because it showed Greenbank breached the settlement agreement by inaccurately valuing MRC Refining on his financial affidavits.

¶**33**     Silverdove's new evidence consisted of an affidavit from Vanzant; undated screenshots of a text message to Vanzant from Rock Ballstaedt, the manager of MRC Refining; and a December 28, 2020 letter from Ballstaedt to investors announcing the closing of MRC Refining. Vanzant's affidavit stated that after the superior court entered its findings on October 16, 2020, Ballstaedt sent her a text message informing her that MRC Refining would be closing down. The affidavit does not say when Ballstaedt sent the text message other than after October 16, 2020, and, as noted above, the screenshots were undated. Vanzant's affidavit stated that Ballstaedt's "text message said the closing had been ongoing for months which would mean it was known earlier in 2020 and before trial."

¶**34**     We have reviewed the screenshots of the text message attached to and cited in Vanzant's affidavit and see no language in them indicating that MRC Refining's closing "had been ongoing for months." Although the December 28, 2020 letter stated that "[f]or some time it has been increasingly clear that there are no viable financing options for the project," the phrase "for some time" is vague and Silverdove cited no additional evidence establishing when MRC Refining and Greenbank knew the project would have to be shut down. Silverdove's new evidence did not adequately support its argument that Greenbank, as MRC Refining's president, knew that the company was "worthless" at the time of trial in early October 2020. The superior court did not abuse its discretion by failing to grant Silverdove a new trial on the basis of newly discovered evidence. It was within the court's discretion to conclude the evidence would probably not have changed the result at trial. *See id.* at 165.

V. Attorneys' Fees

**¶35** Silverdove and Greenbank both request attorneys' fees and costs pursuant to A.R.S. §§ 12-341, -341.01 and the settlement agreement. As the prevailing party, Greenbank is entitled to costs and in our discretion we award him reasonable attorneys' fees upon compliance with ARCAP 21.

## CONCLUSION

**¶36** For the foregoing reasons, we affirm.

