Argued October 7, 1968, affirmed June 25, 1969

LEAHEY ᴇᴛ ᴀʟ, *Respondents, v.* COMMIS-
SION FOR THE BLIND ᴇᴛ ᴀʟ,
*Appellants.*

456 P2d 77

*Louis S. Bonney,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

*Carl R. Neil,* Portland, argued the cause for respondents. With him on the brief were Lindsay, Nahstoll, Hart, Dafoe & Krause.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

This is a class suit brought by plaintiffs on behalf of themselves and all other "needy blind people," who are the beneficiaries of a trust created by the will of Ella Munro Burdin. The complaint prayed for the removal of the Commission for the Blind as trustee of the Burdin trust and for an accounting. The Commission appeals from a decree in favor of the plaintiffs.

The findings entered by the learned trial judge contain an excellent statement of the complex background of this case. We need mention here only the ultimate facts which cause us to affirm the decree entered in the court below.

Ella Munro Burdin died in 1948 and left the residue of her estate

"* * * to the Portland, Oregon School for Blind, Portland, Oregon; the same to be used to help needy blind people in said School for Blind, but not to be used for salaries."

The probate court construed the devise to name the State Blind Commission as trustee, since it operated

the Oregon Blind Trade School, to which the will appeared to refer. In 1950 the Commission received as trustee the residue of the estate amounting to about $109,000.

From 1950 to 1955 the Commission diligently sought a way to devote the trust property to the use intended by Mrs. Burdin. The search was complicated because, for reasons not relevant here, the Commission in 1951 closed the Blind Trade School.

In about 1954 the idea was conceived of using the funds of the Burdin trust to build a building to house all of the varied activities of the Commission which were then carried on in rented quarters. In 1955 the Commission petitioned the Circuit Court for Multnomah County for instructions and for permission to purchase a satisfactory site and to construct a building to house its activities. For some reason no representatives of the beneficiaries, the needy blind, were joined as parties in that suit. By a decree entered in September, 1955, the court authorized the Commission to use the trust funds to buy land and to construct a building:

"* * * to house the industrial type operation, office and storage facilities necessary for the activities directly related to plaintiff's over-all program and to assure the availability of adequate public transportation facilities and parking space for the needy blind utilizing the projected installation on condition that said trust fund shall be reimbursed for said expenditures by the charging of a rental fee for the use of any portion of said building and facilities by the State of Oregon and persons other than the needy blind."

The decree further authorized the Commission to use the excess of its income "over and above mainte

nance costs of the building" for certain specified purposes, including:

> "* * * purchase of raw materials utilized by the needy blind in the industrial operation, for the purchase of educational and research supplies utilized for the benefit of the needy blind, for the purchase of medical, surgical and hospital services primarily for the conservation of vision and restoring sight of the needy blind, for the purchase of training and occupational tools and equipment and the establishment of business enterprises pertaining to the rehabilitation of the needy blind."

The decree specifically directed the Commission to use the trust property, both principal and income, solely for the needy blind. The court retained continuing jurisdiction of that suit and thereafter entered ex parte supplemental decrees which are not important in the present case.

The building, as authorized by the decree was completed and occupied by the Commission in June, 1957. The building was called the Ella Munro Burdin Memorial Center for the Blind and contained about 5,000 square feet of office space and about 10,000 feet of industrial and warehouse space. All of the Commission's activities were carried on in this building including its division of rehabilitation service, ORS 346.180, the blind industries program, ORS 346.190, and other programs of the Oregon Service Center for the Blind, ORS 346.310. Most of those activities served both needy and non-needy blind. It was necessary, therefore, to determine what portion of the building was devoted to help the needy blind and what portion was used for non-trust purposes.

Unfortunately, the decree of September 1955 placed the Commission in the untenable position of serving

two masters. As landlord it owed undivided loyalty to the Burdin trust. As tenant it owed the same loyalty to the state, of which it is a statutory agent, ORS 346.120. Under the handicap of these conflicting interests the Commission had to determine from time to time what constituted a reasonable rental for the building and how much of that rental was for the benefit of the needy blind and how much should be charged to non-trust uses.

When the Commission was acting for the state its judgment as to what rental the state should pay for non-trust uses was not accepted by the Department of Finance and Administration and the legislature, which had to appropriate the money to pay the rent. The administrator of the Commission testified:

"Q As a matter of fact, you went to the Department of Finance and Administration with your budget a couple of times in the last four or five years and asked for rent increases which were disapproved?

"A Yes. Each biennium we ask for higher rental and up until this last one we are in now, they turned us down."

As a result the Commission, as tenant, paid whatever rent the legislature appropriated and as landlord accepted the rent in spite of its conviction that the amount was inadequate. The Commission did not at any time ask the court for advice concerning either the reasonable rental value of the property or the allocation of the rental between trust and non-trust uses.

Although the Commission's intentions were good, its representation of conflicting interests inevitably caused friction and resulted in this litigation. The decree in this case removed the Commission as trustee

and appointed three persons as successor-trustees. It also required the Commission to pay $500 as rental for the month of June, 1957, and to reimburse the trust in the sum of $4,405.50 for janitorial service improperly charged to the trust. The Commission complains only because of its removal as trustee.

The trial court found that the members of the Commission and its staff had acted in good faith and without any deliberate impropriety. We concur in that finding. We also agree with the trial court that the Commission should not be continued in a position involving conflicting interests and divided loyalties. In spite of good intentions such conditions will not be tolerated by a court of equity, *U. S. Nat. Bank v. Guiss et al,* 214 Or 563, 583, 331 P2d 865 (1958); *Waterbury v. Nicol et al,* 207 Or 595, 607-609, 296 P2d 487, 298 P2d 211 (1956); *Wood et al v. Honeyman et al,* 178 Or 484, 560, 169 P2d 131, 171 ALR 587 (1946). See, also, Bogert on Trusts (2d ed) 208, § 391, 473, 475, 498, § 543; IV Scott on Trusts (3d ed) 2979, § 379; Restatement of Trusts 2d 270, § 379, 277, § 387.

The decree of the trial court is affirmed.