Argued June 8, affirmed in part, reversed in part and remanded
October 12, petition for rehearing denied November 15, 1977

CLOUD, *Appellant,*

*v.*

UNITED STATES NATIONAL BANK
OF OREGON, *Respondent,*
SPINO et al, *Appellants.*
(No. 396513, SC 24566)

570 P2d 350

Gile R. Downes, of Jensen, DeFrancq, Holmes & Schulte, Portland, argued the cause for appellant. With him on the briefs were Lewis & Foster, The Dalles. Also on the briefs were Heisler & Van Valkenburgh, The Dalles, for appellants Delores Cloud Spino, Willard Cloud, Sylvia Cloud Martinez, Sylola Cloud Leslie, Elaine Cloud by and through her guardian ad litem, Theresa Henry, Sharon Ann Cloud McConville and Mike Larson Cloud.

Karen Creason, of Davies, Biggs, Strayer, Stoel and Boley, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Holman, Howell, and Tompkins, Justices.

HOWELL, J.

**HOWELL, J.**

■ This is a suit in equity by the beneficiaries of a trust against the trustee, the United States National Bank of Oregon. All the individual parties are American Indians. The plaintiff, George Cloud,[1] alleged that the trustee breached its fiduciary duty to the beneficiaries by disbursing certain funds in violation of its trust duties and asked for an accounting, for reimbursement of the funds paid out, and for removal of the trustee. All of plaintiff's claims stem from the contention that the funds were disbursed after the trustor had become incompetent or, alternatively, that the instructions to disburse were the product of undue influence. The trial court found for the defendant and dismissed the suit. We review de novo.

Martha Sconawah, the trustor, was an old Yakima Indian woman who had lived in The Dalles area since before the turn of the century. She was fluent in the Wasco and Yakima languages but could not read, write or speak English. She customarily "signed" all documents with her thumbprint. In the last years of her life, Martha began to show signs of her advanced age. There is controversy as to the extent of her deterioration, but it is undisputed that toward the end she had difficulty walking without assistance, she lost considerable weight, and her eyesight was failing. She died on September 28, 1971, of a cerebral vascular accident due to advanced arteriosclerosis. Her age was unknown but was estimated at between 80 and 120 years.

Martha created a revokable trust with the defendant's trust department on December 29, 1959.[2] The

---

[1] Mary Cloud was the original plaintiff. She died prior to trial, and this action is continued by George Cloud, her husband, as her personal representative.

[2] The relevant trust provisions include the following:
  "* * * * *.
  "                          ARTICLE II
  "Notwithstanding any of the trusts and power herein declared, the

corpus of the trust consisted of $58,000. Under the terms of the trust Martha could order withdrawal of all or any part of the trust corpus at any time. After the death of Martha, Mary Cloud was to receive the income from the trust estate for her life, and upon her death the children of Mary were the beneficiaries.[3] From the time of the creation of the trust in 1959 until Martha's death in 1971, five withdrawals were made.

trustor may, by written instrument executed by the trustor and filed with the trustee, revoke, alter, or amend this agreement at any time, or withdraw from the trust estate, discharged of the trust, the whole or any part of the capital and accumulated income upon paying all sums due to the trustee and indemnifying the trustee to its satisfaction against liabilities lawfully incurred in the administration of this trust.

"\* \* \* \* \*.

"                         ARTICLE VIII

"The principal and income of the trust estate shall be distributed as follows:

"(a) During the lifetime of the trustor the trustee shall distribute income and principal to or for the benefit of the trustor in accordance with any directions given by the trustor from time to time. If the trustor becomes incapacitated or for any reason is unable to manage her own affairs, the trustee shall distribute to or for her benefit income and principal in amounts determined by the trustee to be necessary for her maintenance and support. Any income not distributed under the provisions of this paragraph shall be accumulated and added to and thereafter administered as a part of the principal of the trust.

"(b) Upon the death of the trustor, the trustee shall pay from the assets of the trust the expenses of last illness and funeral of the trustor, debts, taxes, and other liabilities of the trustor's estate but such payments shall be made only if assets of the estate of the trustor are inadequate for such purposes or if the assets of the trustor cannot readily be liquidated to obtain cash for such purposes. The extent to which assets other than assets of this trust shall be used for the purposes stated in this paragraph shall be determined by the trustee in its discretion.

"(c) Upon the death of the trustor, the trust shall be continued for the benefit of the trustor's niece, MARY CLOUD. The trustee shall distribute to or for the benefit of said niece the net income of the trust for her lifetime.

"(d) Upon the death of the survivor of the trustor and her niece, Mary Cloud, the trust shall be administered for the benefit of the children of Mary Cloud. \* \* \*"

[3] Mary Cloud was Mrs. Sconawah's biological niece but was raised as her daughter and was so considered by the parties. Esther Wilkinson, Mary's daughter, was also raised by Martha and was treated as Martha's granddaughter.

[ 86 ]

The validity of the first three is not challenged here. The last two withdrawals occurred in 1971.

On April 26, 1971, the first of the two disputed transfers was executed. Esther Wilkinson, Martha's granddaughter, solicited funds from Martha and wrote the letter of withdrawal, which Martha executed with her thumbprint, as was her custom. The bank received the letter on May 18, 1971, and paid the $5,000 requested on June 10, 1971. On September 27, 1971, the day before Martha's death, Esther personally presented the second disputed instrument to the bank trust officers. The document then received Martha's thumbprint with the trust officers acting as witnesses. The instrument provided for the release of $23,000 to Esther from the trust fund which was paid in installments of $1,000 on October 1, 1971, $12,000 on October 28, 1971, and $10,000 on May 31, 1972.[4]

■ Before we examine the validity of each of these transactions, it is important to frame the issue. The duty of a trustee to its beneficiaries is a heavy one, *see, e.g., Leahey et al v. Com. for the Blind,* 253 Or 527, 456 P2d 77 (1969), but the possibility that the settlor of a revocable trust could attempt to withdraw funds from the trust after having become incompetent or subject to undue influence puts that trustee in a difficult position. If the instrument is valid and the trustee refuses to allow the withdrawal, the trustee is in breach of contract with the settlor. If, on the other hand, the instrument is invalid, the trustee runs a serious risk of breaching its duty to the beneficiaries of the trust if the funds are released.[5]

[4]Three thousand dollars of the $23,000 was used for burial expenses and to purchase headstones for Martha and members of Martha's family.

[5]This problem has been handled by statute in some states. Colorado provides:

"* * * If a trustee of an express trust which includes property subject to a power of appointment or other power of disposition distributes such property pursuant to an instrument exercising such power and without knowledge on [sic] any infirmity in such instrument, and thereafter

██ The plaintiff contends that a finding of incompetence or undue influence in either of these transactions is equivalent to finding that the trustee has breached its fiduciary obligation to the beneficiaries of the trust.[6] We cannot agree.

Although it is not directly on point, the Restatement of Trusts (Second), § 226A, speaks to an analogous problem, and we think the underlying policy is applicable here:

> "Liability for Payments or Conveyances
> Made under an Invalid Trust

> "If the trustee pays or conveys the trust property or any part thereof to the person who by the terms of the trust is entitled to it, and the trust is later held to be invalid in whole or in part, the trustee is liable to the person entitled to the property, if, but only if, when he made such payment or conveyance he knew that the trust was invalid or had or should have had reasonable doubt as to its validity." Restatement of Trusts, supra at 526.

Thus, under § 226A the trustee's liability turns on his actual or constructive knowledge. *Accord, Wodell v. John Hancock Mut. Life Ins. Co.,* 320 Mass 1, 67 NE2d 469 (Mass 1946); *Application of Spitzmuller,* 279 App Div 233, 109 NYS2d 1 (1951); *Hughes et al v. First Nat. Bank in Oakland,* 47 Cal App 2d 547, 118 P2d 309 (1941); *Jamison v. Culligan,* 151 Mo 410, 52 SW 224 (1899). Scott, in his treatise on trusts, agrees that the trustee should be liable for payments made under an invalid instrument only if the trustee has notice of

---

such instrument shall be held wholly or partially invalid, such trustee shall not be responsible to those persons who would take in default of appointment." Colorado R.S. § 15-1-203 (1973).

*See also* Mass Ann Laws Ch 215, § 9A (1977); Penn Stats Ann tit 20, § 3329. These statutory solutions uniformly protect the trustee from liability if he acts in good faith and without notice.

[6]The parties spend a considerable amount of time discussing whether an amendment to the trust agreement by an incompetent settlor is void or voidable. However, we believe the issue to be whether the trustee breached its duty to preserve the trust property and not whether the withdrawals ordered by the settlor are void or voidable because of incompetency.

the invalidity. Scott on Trusts 1803, § 226.1 (3d ed 1967).[7]

We see no reason to distinguish between payments made under a facially valid trust agreement and payments made under a facially valid withdrawal by a settlor under the trust agreement.

There are sound policy reasons for adopting the position of § 226A. An absolute liability standard would force the trustee to either (1) become the guarantor of the validity of all its actions, inevitably raising the cost to the settlor; (2) refrain from offering its services as trustee, thereby depriving the public of such services; or (3) apply to the already crowded courts for directions every time a withdrawal is requested. None of these effects are desirable and all can be avoided without injustice to the settlor or the beneficiaries by adopting the approach of the Restatement, § 226A. Schuyler, *Payments Under Void Trusts,*

---

[7]Section 226.1 of Scott on Trusts provides in part:

"Where a person who is not under a legal incapacity transfers property inter vivos in trust, he cannot hold the trustee liable for paying or conveying the trust property in accordance with the terms of the trust, even though the trust is invalid. He cannot complain that the trustee did what he himself had authorized him to do. This is true, for example, where the settlor was induced to create the trust by fraud, duress, undue influence or mistake, or where the trust was created for an illegal consideration or for an illegal purpose, even in those cases where the settlor is entitled to enforce a resulting trust, or where the trust fails because there is no beneficiary to enforce it. The result is different, of course, where the trustee has notice of the invalidity of the trust and has notice that the settlor has revoked his authority or would not wish him to perform the trust.

"More difficult questions arise in the case of a testamentary trust. If the trust is invalid there is a resulting trust for the estate of the testator, that is, for his heirs or next of kin or residuary devisee or legatee. If the trustee makes payments to the named beneficiaries, knowing of the invalidity of the trust, it seems clear that he is liable to those who take under the resulting trust. If he makes such payments without knowledge and without reason to know of the invalidity of the trust, he incurs no such liability. The difficult case is where, although he does not know of the invalidity of the trust, there are circumstances which might give him reason to know of its invalidity. In such a case it would seem that he incurs a liability if he makes payment in spite of the fact that he has in fact reasonable doubts as to the validity of the trust. In such a case he should, for his own protection, apply to the court for instructions." Scott on Trusts 1803-804. (Footnotes omitted.)

65 Harv L Rev 597 (1951). Therefore, a conclusion that the settlor was incompetent or subject to undue influence cannot end the inquiry; it must merely mean that the trustee has lost the absolute protection of being able to claim that it was following the valid instructions of the settlor. We believe that a finding of invalidity raises the question of whether or not the trustee has acted with "such care and skill to preserve the trust property as a man of ordinary prudence would * * * in dealing with his own property," *Elliott v. Mosgrove,* 162 Or 507, 538, 91 P2d 852 (1939), and that to show a breach of that duty of care the person attacking the transaction must show that the trustee had knowledge of the invalidity of the withdrawal instrument or of facts from which there was reason to doubt its validity. Stated in another way, the trustee is entitled to rely on the presumption that the instrument is valid until he has reason to believe otherwise. Moreover, the presumption is that one is competent, and the burden of proof is on the party urging incompetence.

Turning to the facts of this case, the trial court found that Martha was competent and did not act subject to undue influence on April 26, 1971, when the first disputed transaction occurred.[8] The plaintiff assigns this as error. We need not consider this question, however, because, even assuming incompetence or undue influence, the trustee did not know nor did it have any reason to believe that the instrument in question was invalid. The bank received the document by mail, as it had the prior withdrawals by Martha. The instrument was signed with a thumbprint as were the prior withdrawals and the trust instrument itself. It was witnessed by two witnesses, as were the other withdrawals, and the trust officers

---

[8]The trial judge made no specific finding regarding undue influence. However, undue influence was one of the grounds alleged in plaintiff's complaint, and the trial court entered a decree dismissing the plaintiff's complaint. Thus, there was an implicit finding of no undue influence, and the issue is properly raised on appeal.

attempted to compare the thumbprint on the withdrawal with that on the trust instrument. Since the facts do not indicate that the bank knew or should have known of any incompetence or undue influence, we cannot say that the bank breached its fiduciary duty of care to the beneficiaries.

■ The date of the second disputed transaction, September 27, 1971, is a different matter. The plaintiff contends that Martha was incompetent when she executed the instrument releasing funds to Esther, and we agree. The test for determining mental competence was stated by this court in *Kruse v. Coos Head Timber Co.,* 248 Or 294, 306, 432 P2d 1009, 1015 (1967):

> "To have the mental capacity to contract it is necessary that a person have the ability to comprehend the nature of the transaction in which he is engaged and to understand its quality and consequences."

Plaintiff produced evidence that Martha was confused, unable to care for or feed herself, and occasionally "spoke" to old friends long since dead. There was testimony that on September 26, the day before the execution of the second disputed instrument, Martha was unable to speak, did not recognize her family, and was close to unconsciousness. When Martha authorized the second withdrawal, after having been driven to Portland by Esther, she was lying in the back seat of the car parked on the street by the offices of the trustee. One of the bank trust officers who witnessed the September 27 request for withdrawal testified that Esther spoke to Martha in an Indian language after he had asked Esther to explain the purpose and effect of the document. The bank officer could not, however, testify as to what Esther told Martha or whether Martha understood any of it. Further, there was testimony that Esther placed Martha's thumb on the inkpad and then on the document. Martha died the following day in Esther's home. Our examination of the record as a whole leads us to the conclusion that Martha was incompetent on September 27, 1971.

The facts indicate that the trustee should have had serious doubts as to the settlor's competence on September 27 and therefore doubts as to its right to honor the instrument executed that day. The fact that Martha was lying on her back in the car when she executed the document, her advanced age, her general physical deterioration, and their inability to communicate with her should have raised a question of Martha's competence in the minds of the trust officers. The file memo prepared by the trust officers immediately after their meeting with Martha reflects that they did, in fact, have doubts as to her competence.

■ Because the trustee should have known of the settlor's incompetency, we conclude that accepting and acting on the instrument indicates an absence of the skill and care of a prudent man handling his own property.

■ ■ The plaintiff also argues that, in light of the breach of trust, the trustee should be removed. Removal of the trustee is within the discretion of the court and should be done only upon a showing "that the continuance of the trustee in office would be detrimental to the trust." Scott on Trusts 841, § 107 (3d ed 1967). *See Leahey et al v. Com. for the Blind, supra; Wood v. Honeyman,* 178 Or 484, 169 P2d 131 (1946). Article VII, paragraph (d), of the trust agreement provides that the trust will expire when the youngest child of Mary Cloud reaches the age of 21. Paragraph (f) indicates that all of Mary's children are now 21 except the youngest, who will be 21 on November 27 of this year. Because the trust is near termination, we see no need to remove the trustee.

■ Plaintiff seeks to recover attorney fees. Plaintiff's suit has been for the benefit of the other beneficiaries of the trust, and plaintiff is entitled to reasonable attorney fees to be paid from the corpus of the trust. *Kinney v. Uglow,* 163 Or 539, 98 P2d 1006 (1940).

■ The defendant bank is therefore liable for the $20,000 paid to Esther as a result of the September 27,

1971, transaction and also liable for the additional $2,000 paid to Esther which she claims was spent for headstones for members of Martha's family and for a memorial party. The plaintiff does not claim recovery of the $1,000 spent for Martha's funeral and burial as the bank was obligated to pay that expense under the trust agreement. Therefore, plaintiff is entitled to a decree requiring $22,000 to be returned to the trust estate for distribution according to the terms of the trust. The trust is also entitled to interest at 6 per cent from October 28, 1971, the date on which $12,000 was paid to Esther, and from May 31, 1972, the date of the $10,000 payment. Interest shall run until such time the defendant reimburses the trust for the payment of the $22,000.

Plaintiff contends that, because of the breach of trust, compensation should be denied for the trustee's services from the date of the breach. Whether or not compensation is denied is wholly within the discretion of the court. Restatement of Trusts (Second) § 243. Factors to be considered in the exercise of that discretion include whether the breach was intentional, negligent or without fault; whether the breach relates to part or all of the trust; and whether the trustee's services have been of value to the trust. Restatement, *supra,* comment c. Here, the trustee was at fault, but the breach affected only a portion of the trust corpus and valuable services were previously rendered for the trust. In the exercise of our discretion, we feel that the trustee should be denied compensation from October 28, 1971, the date of the first payment, until the date the $22,000 is returned to the trust. The suit is remanded to the trial court for a determination of the amount of fees collected by the trustee during the period mentioned, and for an award of reasonable attorney fees.

Affirmed in part, reversed in part and remanded; plaintiff to recover costs.