Argued and submitted July 15, 2014, reversed and remanded June 10, petition for review denied October 8, 2015 (358 Or 69)

In the Matter of the Second Amendment and
Restatement of Pe Kuang Tseng Revocable Trust
Agreement, dated November 7, 2007.

Michael TSENG,
Richard Tseng and Dejin Tseng,
*Appellants,*

*v.*

Paul C. TSENG
and Peter C. Tseng,
individually and as Co-Trustees of the
Second Amendment and Restatement of
Pe Kuang Tseng Revocable Trust Agreement
dated Nov. 7, 2007,
*Respondents.*

Multnomah County Circuit Court
120891165; A153639

352 P3d 74

Bruce G. Thompson filed the briefs for appellants.

Anthony J. Dal Ponte argued the cause for respondents. With him on the brief was Samuels Yoelin Kantor LLP.

Before Lagesen, Presiding Judge, and Tookey, Judge, and Edmonds, Senior Judge.

LAGESEN, P. J.

## LAGESEN, P. J.

This appeal requires us to address a question of first impression in this state: whether and to what extent, after a settlor's death, ORS 130.710(1) requires a trustee of a revocable trust to provide beneficiaries of the trust with information about the administration of the trust during the settlor's lifetime. We conclude that the statute, when construed in the context of the Oregon Uniform Trust Code (OUTC) and its legislative history, requires the trustee to provide qualified beneficiaries with, in the words of the statute, "the material facts necessary for those beneficiaries to protect their interests." ORS 130.710(1). Because the probate court concluded that the beneficiaries of a revocable trust cannot, as a matter of law, obtain any information about the trust's administration during the settlor's lifetime, we reverse and remand for further proceedings consistent with this opinion.

### STATUTORY AND FACTUAL BACKGROUND

This case requires us to construe provisions of the OUTC governing revocable trusts, as well as provisions governing the rights of trust beneficiaries to obtain information about trust administration. In 2005, Oregon adopted the Uniform Trust Code with modifications. *Hope Presbyterian v. Presbyterian Church (USA),* 352 Or 668, 687, 291 P3d 711 (2012). *See generally* Valerie Vollmar, *The Oregon Uniform Trust Code and Comments,* 42 Willamette L Rev 187 (2006) (hereinafter *Oregon UTC & Comments*). In addressing issues of trust law, we look both to the OUTC and to Oregon case law, because "the common law remains relevant: 'The common law of trusts and principles of equity supplement this chapter [ORS chapter 130], except to the extent modified by this chapter or other law.'" *Hope Presbyterian,* 352 Or at 687 n 5 (quoting ORS 130.025).

A revocable trust is a trust over which the settlor retains complete control while alive: "'Revocable trust' means a trust that can be revoked by the settlor without the consent of the trustee or a person holding an adverse interest." ORS 130.010(16). The OUTC "treats the revocable trust as the functional equivalent of a will." *Oregon UTC*

& *Comments*, 42 Willamette L Rev at 304. During the settlor's lifetime, the settlor retains the power to "revoke or amend the trust." ORS 130.505(1). The settlor has the power to direct the actions of the trustee, including the power to direct the trustee to take actions "contrary to the terms of the trust." ORS 130.685(1). "While the settlor of a revocable trust is alive, rights of the beneficiaries are subject to the control of the settlor, and the duties of the trustee are owed exclusively to the settlor." ORS 130.510(1). By placing control over beneficiary rights in the hands of the settlor during the settlor's lifetime, ORS 130.510 has the "effect of postponing enforcement of the rights of the beneficiaries of a revocable trust until the death of the settlor or other person holding the power to revoke the trust. This section thus recognizes that the settlor of a revocable trust is in control of the trust and should have the right to enforce the trust as long as the settlor is alive." *Oregon UTC & Comments*, 42 Willamette L Rev at 312.

Given that the settlor of a revocable trust retains complete control over the trust while alive, if the trustee of a revocable trust engages in conduct amounting to a breach of trust during the settlor's lifetime, and the settlor consents to that conduct, ratifies it, or releases the trustee from liability for it, that consent, ratification, or release is binding on all other beneficiaries of the trust. *Oregon UTC & Comments*, 42 Willamette L Rev at 392 (explaining that, as applied to a revocable trust, ORS 130.840, which authorizes a trust beneficiary to consent to or approve of conduct by the trustee that constitutes a breach of trust, means that "[a]n approval by the settlor of a revocable trust * * * binds all the beneficiaries"). Additionally, "while the settlor of a revocable trust is alive, beneficiaries other than the settlor have no right to receive notice, information or reports" from the trustee regarding trust administration to which such beneficiaries would otherwise be entitled under ORS 130.710. ORS 130.710(9); *see also* ORS 130.510(1) (explaining that while the settlor of a revocable trust is alive, "[b]eneficiaries other than the settlor have no right to receive notice, information or reports under this chapter"). Thus, the OUTC explicitly restricts beneficiaries' access to information about the trust while the settlor is alive.

When a "formerly revocable trust [becomes] irrevocable, whether by the death of the settlor or otherwise," the trustee generally must alert all "qualified beneficiaries"[1] of the existence of the trust, the identity of the settlor or settlors, and the qualified beneficiaries' right to obtain a copy of the trust document and receive annual reports regarding trust administration. ORS 130.710(2). Qualified beneficiaries also are entitled to be "reasonably informed about the administration of the trust and of the material facts necessary for those beneficiaries to protect their interests." ORS 130.710(1). Beneficiaries who are not qualified beneficiaries do not have any general entitlement to information about trust administration, although a trustee "may" respond to requests for information from such nonqualified beneficiaries. ORS 130.710(1). *See generally* ORS 130.710.

Petitioners Michael Tseng, Richard Tseng, and Dejin Seng are beneficiaries of a formerly revocable trust created by their father, Patrick E. Tseng. Patrick was originally from China and was married to petitioners' mother, Sunyun. Petitioners and their two other surviving siblings, Deya Tseng and Depi Tseng, were born in China to Patrick and Sunyun. Sometime before 1954, Patrick moved to the United States. In 1954, believing his wife and children in China to be dead, Patrick remarried. He and his second wife, Stella Tseng, had two children, Paul Tseng and Peter Tseng, the respondents in this matter. In 1979, Patrick discovered that his family in China was still alive, and he reconnected with them. Patrick subsequently created a revocable trust, naming respondents as cotrustees. Stella and all of Patrick's surviving children were the beneficiaries of that trust.

---

[1] ORS 130.010(14) defines a "qualified beneficiary" as

"a beneficiary who:

"(a) Is a permissible distributee on the date the beneficiary's qualification is determined;

"(b) Would be a permissible distributee if the interests of all permissible distributees described in paragraph (a) of this subsection terminated on the date the beneficiary's qualification is determined; or

"(c) would be a permissible distributee if the trust terminated on the date the beneficiary's qualification is determined."

In simpler terms, "[t]he 'qualified beneficiaries' are the permissible distributees and the beneficiaries who might be termed the first-line remainder beneficiaries." *Oregon UTC & Comments*, 42 Willamette L Rev at 210.

Patrick died in August 2009. Based on information provided to them by respondents, petitioners learned that approximately $1.8 million had been transferred out of the trust between March 2008 and the date of Patrick's death in 2009, leaving a comparatively small amount of money in the trust. Petitioners believed that those transfers "made no sense" in the light of their understanding of Patrick's intention in establishing the trust, and requested that respondents provide them with more information about the transfers. In response, respondents, "[d]espite repeated demands, [took] the position that they have no duty to explain or to account to the petitioners or any of the beneficiaries for any actions taken prior to [Patrick's] death."

Petitioners thereafter initiated this proceeding in probate court. They alleged that "[b]ased upon the little information" that respondents had provided to petitioners, petitioners believed that withdrawal of funds from the trust was a breach of trust contrary to Patrick's estate plan. Petitioners also alleged that respondents "acted unreasonably * * * in failing to cooperate and answer the reasonable questions of the Petitioners." Petitioners requested the following relief:

"1.   That respondents be removed as co trustees;

"2.   That a successor trustee be appointed;

"3.   That respondents be required to submit a formal accounting of the administration of the trust from November 9, 2007 to date;

"4.   That respondents be found to have breached their fiduciary duty;

"5.   That respondents be held personally liable for damages as proved;

"6.   That respondents personally pay for petitioners['] attorney fees and costs incurred;

"7.   For such further relief as the court deems equitable."

Respondents filed a "Motion for Summary Determination Regarding Alleged Obligation to Give Notice, Information, and/or Reports Regarding Trust Administration." In the motion, respondents asserted that the petition should

be dismissed on the ground that respondents had no legal obligation to provide information to petitioners about trust administration during Patrick's lifetime:

"Respondents respectfully move the court to find as a matter of law that, pursuant [to] ORS 130.710(9), Petitioners are not entitled to notice, information, or reports regarding Trust administration or activities prior to the date that the settlor [Patrick Tseng] died; i.e., the date that the Trust became irrevocable. As a result of that fact, the Petition lacks sufficient legal basis to support any of its claims. Petitioners therefore further move the court to dismiss the petition in its entirety[.]"

Petitioners opposed the motion, arguing that ORS 130.710(9) meant only that they had not been entitled to information about trust administration *while* Patrick was alive, and that, once Patrick died, ORS 130.710(1) entitled them, as qualified beneficiaries, to, at a minimum, information about trust administration sufficient to permit them to "protect their interests." In response, respondents did not dispute that petitioners were qualified beneficiaries, but argued that because the trust was revocable, "[p]etitioners did not acquire an interest" in it until Patrick's death, and that information about trust administration before Patrick's death therefore was not needed to protect any interest that petitioners had in the trust.

The probate court granted respondents' motion, ruling that petitioners "have no right whatsoever to have any information." It then entered a general judgment dismissing the petition with prejudice. Petitioners timely appealed. On appeal, they reiterate their argument that ORS 130.710(1) entitles them, as qualified beneficiaries, to information sufficient to protect their interests, including, as necessary, information regarding the administration of the trust before Patrick's death. Although petitioners requested a "full accounting" of the trust administration from November 9, 2007, onward, in the petition, in their briefs on appeal petitioners have emphasized (as they did in their briefs before the probate court) that their request for information is narrower in scope, in that they seek only that information necessary to protect their interests, that is, information as to "whether it was the settlor who authorized the transfer of

$1.8 million out of the trust." They explain: "Petitioners filed their case to see whether it was the settlor who made or authorized the withdrawal of $1.8 million from the trust. If it was, Petitioners' case disappears."

## STANDARD OF REVIEW

The probate court granted the motion for summary determination and entered judgment in favor of respondents, on the ground that ORS 130.710(9) established as a matter of law that petitioners were not entitled to the information they sought regarding the administration of the trust before the settlor's death. Because the probate court resolved the motion on the allegations in the petition alone and did not make any findings, for purposes of our review, we accept the allegations in the petition as true and review for legal error the court's conclusion that ORS 130.710(9) means that petitioners are not entitled to information regarding the administration of the trust during the settlor's lifetime. *See Providence Health System v. Walker*, 252 Or App 489, 494, 289 P3d 256 (2012), *rev den*, 353 Or 867 (2013) (questions of statutory interpretation are reviewed for legal error).

## ANALYSIS

As we understand the probate court's ruling, the court ruled categorically that the beneficiaries of a revocable trust are not entitled to any information regarding the administration of the trust during the settlor's lifetime. We conclude that that ruling is at odds with ORS 130.710(1), the OUTC, and its legislative history.

We start by observing that, once a revocable trust becomes irrevocable as a result of the settlor's death, the statutory prohibitions on the trustee's dissemination of information to trust beneficiaries contained in ORS 130.710(9) and ORS 130.510(1) no longer apply. ORS 130.710(9) states:

"Notwithstanding any other provision of this section, *while the settlor of a revocable trust is alive*, beneficiaries other than the settlor have no right to receive notice, information or reports under this section."

(Emphasis added.) The comment to that provision echoes the provision's plain text:

"Subsection (9) overrides all provisions of ORS 130.710 *while the settlor of a revocable trust is alive.* Like ORS 130.510(1), subsection (9) provides that beneficiaries of a revocable trust other than the settlor shall have no right to receive notice, information, or reports under ORS 130.710 *during the settlor's lifetime.*"

*Oregon UTC & Comments*, 42 Willamette L Rev at 363 (emphasis added). Similarly, ORS 130.510(1) provides, in relevant part:

"*While the settlor of a revocable trust is alive,* * * * [b]eneficiaries other than the settlor have no right to receive notice, information or reports under this chapter."

(Emphasis added.) And like the comment to ORS 130.710, the comment to ORS 130.510 explains that the provision limiting the trustee's obligation to provide information and report to trust beneficiaries applies only so long as the settlor is alive: "Pursuant to this section, the duty under ORS 130.710 to inform and report to beneficiaries is owed only to the settlor of a revocable trust *as long as the settlor is alive.*" *Oregon UTC & Comments*, 42 Willamette L Rev at 312 (emphasis added).

The necessary implication of those provisions is that, once the settlor of a revocable trust dies—and the trust becomes irrevocable as a result—a trustee's general ORS 130.710 obligations are no longer "overrid[den]" by ORS 130.710(9) and ORS 130.510(1), and the trustee becomes obligated to supply the beneficiaries of the trust with whatever information ORS 130.710 generally requires the trustee to provide to beneficiaries.

ORS 130.710, in turn, specifies that what information a beneficiary is entitled to receive depends on the beneficiary's status. If a beneficiary is a qualified beneficiary, then the beneficiary is entitled to be "reasonably informed about the administration of the trust and of the material facts necessary for those beneficiaries to protect their interests." ORS 130.710(1). In addition, with some exceptions, a qualified beneficiary is entitled to a trustee's report—"at least annually"—that documents trust property, liabilities, receipts and disbursements. ORS 130.710(3)(a). If the beneficiary is not a qualified beneficiary, then the beneficiary

is not entitled to any information about trust administration as a matter of right. Rather, whether to provide a beneficiary who is not a qualified beneficiary with information regarding trust administration is a discretionary matter for the trustee: "If reasonable under the circumstances, a trustee *may* respond to a request for information related to the administration of the trust from a beneficiary who is not a qualified beneficiary." ORS 130.710(1) (emphasis added).

Here, respondents do not appear to dispute that petitioners are currently qualified beneficiaries.[2] Consequently, among other things, petitioners are entitled to obtain from the trustee "the material facts necessary * * * to protect their interests." ORS 130.710(1). On that point, petitioners contend that to protect their interests under the trust, they need to know whether Patrick authorized the $1.8 million transfer from the trust. Petitioners further assert that, in the event the transfers were not authorized by the trust document or by Patrick, they would be able to challenge those pre death transfers by respondents on that basis. Put another way, petitioners assert that the $1.8 million transfer—if that transfer was not authorized by the terms of the trust or, alternatively, by Patrick—harmed their beneficial interest in the trust by improperly depleting the trust. They claim an entitlement under ORS 130.710(1) to sufficient information to assess whether or not that harm to their beneficial interest in fact occurred so that, if it did, they can seek redress for that harm.

In response, relying on cases that hold that a beneficial interest in a revocable trust is not a *property* interest, respondents argue that petitioners had no "cognizable" interest under the trust during the settlor's lifetime. Respondents further argue that, even if the trustee of a revocable trust engages in unauthorized transactions during the settlor's

___

[2] Petitioners did not allege in the petition that they are qualified beneficiaries as that term is defined in the OUTC. However, in their briefing below and on appeal, they have characterized themselves as qualified beneficiaries. Respondents have not disputed that characterization, and appear to agree that, at least as of the date of Patrick's death, petitioners became qualified beneficiaries. Our assumption should not be construed to bar the parties from developing further facts about petitioners' status on remand, in light of the fact that a beneficiary's entitlement to information hinges on whether the beneficiary is a qualified beneficiary, as explained further below.

lifetime that are not directed or approved by the settlor, the beneficiaries of the trust would not have "standing" to seek redress for those transactions, even after the settlor's death and even if those unauthorized transactions detrimentally affected the beneficiaries' beneficial interests in the trust. From those assertions, respondents argue that the OUTC does not entitle petitioners to any information regarding the challenged transfers because, in respondents' view, petitioners would not be able to use that information to challenge any conduct of the trustees during Patrick's lifetime.

Respondents' arguments conflict with the words, structure, and history of the OUTC. Respondents are correct that a beneficial interest in a revocable trust generally is not a *property* interest under Oregon law. *See, e.g., Johnson v. Commercial Bank*, 284 Or 675, 682, 588 P2d 1096 (1978) (concluding that, while alive, the settlor of a revocable trust retains an interest "to the entire trust"); *Githens and Githens*, 227 Or App 73, 84-88, 204 P3d 835, *rev den*, 347 Or 42 (2009) (discussing Oregon common law of trusts in concluding "that a beneficial interest in a revocable trust is not 'property' subject to division in a dissolution case"). However, the text, context, and history of ORS 130.710 demonstrate that a beneficiary's entitlement to information under that statute does not turn on whether the beneficiary's interest in a trust qualifies as a property interest under Oregon common law; rather, the text, context and history of the OUTC demonstrate that qualified trust beneficiaries are entitled to obtain the material information needed to protect their beneficial interests under the trust (although, in the case of a revocable trust, the qualified beneficiaries cannot obtain such information while the settlor is alive).

Under the OUTC, the "beneficiary" of a trust—even a revocable one—has, by definition, a statutory "interest" in the trust: "'Beneficiary' means a person that *** [h]as a present or future beneficial interest in a trust, whether vested or contingent[.]" ORS 130.010(2)(a). The OUTC further specifies that "'[i]nterests of the beneficiaries' means the beneficial interests provided in the terms of a trust." ORS 130.010(9). As the comments to the OUTC's definitional provisions explain, the legislature broadly defined beneficiary to encompass any person with a beneficial interest in

a trust in order to ensure that all persons with beneficial interests in trusts—whether present or future, vested or contingent—would be entitled to invoke the legal protections of the OUTC—a change from common-law practice. The comments explain:

> "'Beneficiary' * * * refers only to a beneficiary of a trust as defined in the Code. *The definition of 'beneficiary' is a significant change from existing Oregon law.* Under existing law the rights of contingent remainder beneficiaries are significantly more limited than those of vested remainder beneficiaries. This section increases the class of trust beneficiaries entitled to employ judicial process to obtain accountings and other remedies by including contingent remainder beneficiaries in the same category as vested remainder beneficiaries."

*Oregon UTC & Comments*, 42 Willamette L Rev at 206 (emphasis added). Thus, contrary to respondents' argument, petitioners, as the beneficiaries of a trust, have an interest in the trust, and had an interest in the trust before Patrick's death, for the purposes of the OUTC, even though that interest would not have been a property interest under the common law at that time.

Moreover, that statutorily recognized interest is one that the beneficiaries of a trust have statutory standing under the OUTC to enforce. ORS 130.050 broadly authorizes any "interested person" to invoke the court's jurisdiction to intervene in the administration of the trust; it does not require that the person's interest be "vested" in order to invoke the court's jurisdiction. The comments to that provision reflect that the legislature intended for the court to have the broadest possible authority to address issues related to trust administration raised by the trustee or the beneficiaries of a trust. ORS 130.050; *Oregon UTC & Comments*, 42 Willamette L Rev at 232-33. Although in the case of a revocable trust, the OUTC bars the beneficiaries of a revocable trust from enforcing their beneficial interests under the trust while the settlor is alive, nothing in the text, context, or legislative history of the OUTC suggests that the legislature intended to *preclude* such beneficiaries from challenging actions by the trustee during the settlor's lifetime that harmed the beneficiaries' beneficial interests

once the settlor has died.[3] To the contrary, the relevant statutory provisions and their comments indicate that, in the case of a revocable trust, a beneficiary's ability to take steps to protect and enforce the beneficiary's interest in the trust is simply deferred until the settlor's death, at which point the beneficiary is entitled to invoke the provisions of the OUTC to protect the beneficiary's beneficial interest in the trust.

ORS 130.510(1) explains, "[w]hile the settlor of a revocable trust is alive, rights of the beneficiaries are subject to the control of the settlor[.]" That wording indicates two things about the interests of the beneficiaries of a revocable trust. It demonstrates that the legislature viewed the beneficiaries of a revocable trust as having "rights" that exist "while the settlor of a revocable trust is alive." ORS 130.510(1). However, the provision also indicates that, during the settlor's lifetime, the rights of the beneficiary of a revocable trust with respect to the beneficiary's interest in the trust are limited in scope because those rights are "subject to the control of the settlor." ORS 130.510(1). Put another way, the provision indicates that the legislature viewed the beneficiaries of a revocable trust as having an interest in the trust during the settlor's lifetime (consistent with the OUTC definitions of "beneficiary" and "interests of the beneficiaries"), but that the legislature intended that the beneficiaries would not have the power to take steps to protect or enforce those interests as long as the settlor is alive.

The comment to ORS 130.510 corroborates that understanding of the provision. The comment explains that ORS 130.510 has "the effect of *postponing* enforcement of the rights of the beneficiaries of a revocable trust until the death of the settlor or other person holding the power to revoke the trust. This section thus recognizes that the

---

[3] Of course, where the settlor of a revocable trust *is* the trustee of the trust during the settlor's lifetime, there will be nothing for the beneficiaries to challenge. Because the settlor retains complete control over the trust during the settlor's lifetime, actions by a settlor/trustee cannot harm the interests of a beneficiary in any cognizable way. By contrast, when the settlor and the trustee of a revocable trust are not the same person, the actions of the trustee can harm the beneficial interests of the beneficiaries if those actions are not authorized by the terms of the trust, or are not directed by, consented to, or ratified by the settlor.

settlor of a revocable trust is in control of the trust and should have the right to enforce the trust as long as the settlor is alive." *Oregon UTC & Comments*, 42 Willamette L Rev at 312 (emphasis added). By describing the provision's "effect" as "postponing enforcement of the rights of the beneficiaries" until the settlor's death, and reiterating that the settlor controls the trust during the settlor's lifetime, the comment indicates that the legislature understood that (1) the interest of a beneficiary in a revocable trust during the settlor's lifetime is one that is statutorily recognized; (2) that the beneficiary's statutory rights under the OUTC with respect to that interest would be limited in scope during the settlor's lifetime, in that, during that time period, the settlor retains control of the trust and the power to direct or approve actions by the trustee that might otherwise amount to breaches of trust; but (3) after the death of the settlor, the beneficiary of a formerly revocable trust would be entitled to seek redress under the OUTC for any harm to the beneficiary's beneficial interest in the trust, including, necessarily, harm caused by the trustee's conduct during the settlor's lifetime.

The comment to the Uniform Trust Code (UTC) section 603[4]—the UTC provision on which ORS 130.510 is based with minor modification—makes the point that the beneficiaries of a revocable trust can challenge actions by the trustee during the settlor's lifetime after the settlor's death even more explicit. That comment explains:

> "Typically, the settlor of a revocable trust will also be the sole or primary beneficiary of the trust, and the settlor has control over whether to take action against a trustee for breach of trust. Upon the settlor's incapacity, any right of action the settlor-trustee may have against the trustee for breach of trust occurring while the settlor had capacity

---

[4] UTC 603 states:

"(a) While a trust is revocable [and the settlor has the capacity to revoke the trust], rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor.

"(b) During the period the power may be exercised, the holder of a power of withdrawal has the rights of a settlor of a revocable trust under this section to the extent of the property subject to the power."

Uniform Trust Code § 603 (2004).

will pass to the settlor's agent or conservator, who would succeed to the settlor's right to have property restored to the trust. *Following the death or incapacity of the settlor, the beneficiaries would have a right to maintain an action against a trustee for breach of trust. However, with respect to actions occurring prior to the settlor's death or incapacity, an action by the beneficiaries could be barred by the settlor's consent or by other events such as approval of the action by a successor trustee. For the requirements of a consent, see Section 1009."*

Uniform Trust Code § 603 Comment (2004) (emphasis added).

Finally, the comment to ORS 130.840 reinforces our understanding of the enforcement procedures that the legislature intended to make available to the beneficiaries of a revocable trust. ORS 130.840 governs the process by which trust beneficiaries may consent to breaches of trust by a trustee. The comment to that provision explains that "[a]n approval by the settlor of a revocable trust [of a breach of trust by the trustee] * * * binds all the beneficiaries." *Oregon UTC & Comments*, 42 Willamette L Rev at 392. That phrasing again suggests that the legislature intended to treat the beneficiaries of a revocable trust as having a beneficial interest in the trust during the settlor's lifetime for the purposes of the OUTC, but that that interest, and the beneficiary's ability to seek redress for harm to that interest that occurs during the settlor's lifetime is circumscribed by the choices made by the settlor during the settlor's lifetime, in that the settlor has the power to "bind" the beneficiaries with the settlor's choices.

Although the OUTC, not the common law, governs our disposition of this case, we observe that the OUTC's approach to the rights of the beneficiaries of a revocable trust following the settlor's death is consistent with pre-OUTC case law in Oregon and with the common law elsewhere. For example, in *Cloud v. U.S. National Bank*, 280 Or 83, 570 P2d 350 (1977), a suit in equity brought by the beneficiaries of a formerly revocable trust after the settlor had died, the Supreme Court considered whether transfers from a revocable trust made during the settlor's lifetime constituted a breach of trust. *Id.* at 85. The court ultimately

concluded that a trustee breached the trust by acting on the instructions of the settlor when it should have been apparent to the trustee that the settlor was not competent. *Id.* at 91-92. In so doing, the court recognized that, when a trustee acts pursuant to what appear as valid directions from the settlor of a revocable trust, then the trustee does not breach any duty to trust beneficiaries. *Id.* at 90-91. By contrast, actions of the trustee during the settlor's lifetime that were not validly approved by the settlor can constitute a breach of duty to the trust beneficiaries. *Id.* at 91-92.

The court's recognition that actions by the trustee of a revocable living trust during the settlor's lifetime can amount to a breach of trust for which the beneficiaries of a formerly revocable trust are entitled to seek redress after the settlor's death is consistent with the common law of trusts generally. As one treatise explains:

> "Consistent with the rule that the duties of a trustee of a revocable trust are owed exclusively to the settlor, at least while the settlor has capacity, the rights of non-settlor beneficiaries of a revocable trust generally are subject to the control of the settlor. Thus, as a general rule, the trustee cannot be held to account by other beneficiaries for its administration of a revocable trust during the settlor's lifetime. After the settlor's death, of course, the trustee is accountable to the trust's other beneficiaries for its administration of the trust after the settlor's death. *Further, many courts have allowed other beneficiaries to pursue breach of duty claims after the settlor's death, related to the administration of the trust during the settlor's lifetime, when, for example, there are allegations that the trustee breached its duty during the settlor's lifetime and that the settlor had lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct.*"

Alan Newman, George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 964, 103-05 (3d ed 2010) (footnotes omitted; emphasis added); *see also In re Estate of Giraldin,* 55 Cal 4th 1058, 290 P3d 199 (Cal 2012) (concluding that beneficiaries of a formerly revocable trust may challenge trustee's breach of duty during the settlor's lifetime, to the extent the breach harmed the beneficiaries' interests). Although respondents point to different decisions by other

state courts that, in respondents' review,[5] support a different conclusion, those cases do not persuade us that we have misunderstood the intention of the legislature in enacting the provisions of the OUTC at issue in this case.

Having determined that, under the OUTC, the beneficiaries of a revocable trust have a statutorily recognized interest in the trust that exists both during and after the settlor's lifetime (unless, of course, the settlor eliminates that interest), and that the interest is one that the OUTC authorizes the beneficiaries to enforce upon the settlor's death, we return to the question animating this appeal: to what information about the administration of the trust during the settlor's lifetime do the beneficiaries have an entitlement? ORS 130.710(1) answers that question; under

---

[5] Several of the cases on which respondents rely for the proposition that the beneficiaries of a revocable trust have no interest in trust administration during the settlor's lifetime, and thus have no interest to protect after the settlor's death, involved trusts in which the settlor of the trust also acted as trustee while the settlor was alive. *See Matter of Malasky*, 290 AD 2d 631, 736 NYS 2d 151 (2002); *Moon v. Lesikar*, 230 SW3d 800 (Tex App 2007). In general, when the settlor of a revocable trust is also the trustee, there is no possibility that actions by the trustee have breached any duty to the beneficiaries because, when the settlor and trustee are one and the same, there can be no doubt that the trustee's actions were approved by the settlor, defeating any possible claim for breach of duty by the beneficiaries. *See generally Moon*, 230 SW3d at 803-804 (explaining how identity of trustee informs the analysis). By contrast, when the settlor is not the trustee, the trustee's removal of property from the trust could be made without the settlor's approval. Under those circumstances, "after the death of the settlor, the beneficiaries of a revocable trust have standing to challenge pre-death withdrawals from the trust which are outside the purposes authorized by the trust and which were not approved or ratified by the settlor personally or through a method contemplated by the trust instrument." *Id.* at 804 (citing *Siegel v. Novak*, 920 So 2d 89 (Fla App 2006)).

We acknowledge, however, that at least one state appellate court in a state that has adopted the UTC appears to have reached a different conclusion from the one that we reach. *See In re Stephen M. Gunther Revocable Living Trust*, 350 SW3d 44 (Mo Ct App 2011). Additionally, although the Iowa Supreme Court recently held that the beneficiaries of a revocable trust are not entitled to an accounting for the period of time that the settlor is alive, *In re Trust No. T-1 of Trimble*, 826 NW2d 474 (Iowa 2013), the court expressly stated that, in that case, the beneficiary seeking the accounting "never alleged [the trustee] breached her fiduciary duties or harmed the beneficiaries." *Id.* at 489. Accordingly, we do not understand *Trimble* to foreclose the beneficiary of a revocable trust from seeking that information about trust administration during the settlor's lifetime necessary to protect a beneficiary's interests in having the trust administered in accordance with the settlor's wishes. We understand it to hold only that beneficiaries generally are not entitled to a full accounting of trust administration for the period of time in which the settlor was alive.

its plain terms, the qualified beneficiaries are entitled to the "material facts necessary to * * * protect their interests"; other beneficiaries are not entitled to any information as a matter of right. ORS 130.710.

Here, assuming that petitioners are qualified beneficiaries—as we have for purposes of this appeal—petitioners are entitled to obtain from the trustees whatever material facts they need to take steps to protect their beneficial interests under the terms of the trust. In this case, petitioners seek to ascertain whether the transfer of $1.8 million in funds out of the trust before Patrick's death harmed their beneficial interests in the trust by wrongfully depleting trust assets. Under the circumstances of this case—where the settlor and the trustee were not the same[6]—whether or not petitioners' beneficial interests were harmed by the transfer of those funds necessarily turns on whether the terms of the trust authorized the trustees to remove those funds from the trust and, if not, whether Patrick directed, consented to, or ratified, the trustees' transfer of those funds. The probate court is in the best position to assess in the first instance the scope of the material facts that respondents are required by ORS 130.710(1) to provide to petitioners for petitioners to determine whether the $1.8 million transfer from the trust harmed their beneficial interest in the trust.

Reversed and remanded.

---

[6] We again observe that the result would be different if Patrick (the settlor) had served as trustee during his lifetime; in that event, there would be no doubt that Patrick had authorized the transfer of funds, and, thus, there would be no possibility that the transfer harmed the beneficial interests of the beneficiaries, because those interests remained subject to the control of the settlor. Under those circumstances, petitioners would not be entitled as a matter of right to any information about the transfers because such information would not be necessary to protect any interest of petitioners.